2142

SARO INVESTMENTS, a South Carolina General Partnership, Respondent v. OCEAN HOLIDAY PARTNERSHIP, a Virginia General Partnership; South and South Rentals, Inc., as General Partner of Ocean Holiday Partnership, a Virginia General Partnership; Duke Partnership, as General Partner of Ocean Holiday Partnership, a Virginia General Partnership; J.B. South, Individually; Mary S. Mullins, Individually; Lang M. Schupp, Individually; Ray A. Schupp, Individually and D.A. Dessouky, Individually, of which Ocean Holiday Partnership, a Virginia General Partnership; South and South Rentals, Inc., as General Partner of Ocean Holiday Partnership, a Virginia General Partnership; Duke Partnership, as General Partner of Ocean Holiday Partnership, a Virginia General Partnership; J.B. South, Individually; Mary S. Mullins, Individually; Lang M. Schupp, Individually and Ray A. Schupp, Individually, are Appellants.

(441 S.E. (2d) 835)

Court of Appeals

*William W. DesChamps, Jr.*, Myrtle Beach, *for appellants.*

*John E. Copeland, Bellamy, Rutenberg, Copeland, Epps, Graveley & Bowers*, Myrtle Beach, *for respondent.*

Heard Jan. 12, 1994.

Decided Feb. 22, 1994.

CURETON, Judge:

This case centers on rights under two promissory notes and a related wrap-around mortgage. This appeal is from the denial of Ocean Holiday Partnership's (OHP)[1] motion under Rule 60(b)(5), SCRCP for relief from a prior judgment obtained against it by respondent, Saro Investments, on the ground it is no longer equitable that the prior judgment should have prospective application,[2] and from a post-judgment order granting Saro additional attorney fees. We reverse both the denial of relief to OHP and the increased award of attorney fees to Saro.

On November 3, 1984, Saro conveyed to OHP a leasehold interest in motel property in Myrtle Beach. The purchase price of the property was $1,450,000 of which $100,000 was paid at the time of closing with the balance paid by OHP delivering to Saro two promissory notes, one in the amount of $350,000 and another in the amount of $1,000,000. Both notes were secured by a wrap-around mortgage. Under the terms of the wrap-around mortgage, Saro covenanted to continue making payment on a prior wrap-around mortgage indebtedness from Saro to Harkishin Bhambhani, Ashok Bhambhani and Gobind Gidvani (the Bhambhanis) in the original amount of $800,000.

---

[1] For purposes of this appeal, we use OHP to represent all the appellants.

[2] The motion for relief mentions other Rule 60(b)(5) grounds but they are not argued in this appeal.

OHP subsequently sold its leasehold interest to Tom's Mini-Mart, Inc. and took back wrap-around purchase money financing. Tom's thereafter conveyed the property to Ocean Holiday, Inc. who defaulted. Because of Ocean Holiday's default, OHP defaulted in its payments to Saro and in turn, Saro defaulted in its payments to the Bhambhanis, who commenced foreclosure on their mortgage.

Saro waived its rights in the collateral and sued OHP on the notes. Saro was awarded summary judgment against OHP for the face amounts of the notes. At that time, the foreclosure action brought by the Bhambhanis against Saro on their wrap-around mortgage was still pending. OHP and others were made parties to the Bhambhanis' foreclosure by virtue of their ownership interests in the collateral. When that foreclosure was finalized and the property sold, Saro was able to obtain a waiver of deficiency judgment from the Bhambhanis. Consequently, Saro's obligations under the underlying note and mortgage were satisfied.

## I.

OHP asserts in its Rule 60(b)(5) motion that because Saro was relieved of the underlying indebtedness, prospective application of the $1,000,000 judgment on the promissory note was no longer equitable.[3]

OHP first argues the trial court erred in refusing to consider affidavits of the attorneys who were involved in the mortgage transaction between Saro and OHP. OHP argues the affidavits were admissible to explain the intent of the parties to the mortgage transaction, to provide evidence of the consideration for the notes and mortgage, and to supply defi-

---

[3] OHP does not contest $350,000 of the judgment on the theory that the $350,000 represented Saro's equity in the property sold. We take no view as to whether Rule 60(b)(5) has application in the circumstances of this case. The general authority is that a judgment of damages for past wrongs is not such a judgment as is covered or contemplated in this section. *Twelve John Does v. District of Columbia*, 841 F. (2d) 1133 (D.C. Cir. 1988). The rule is generally applicable when there has been a decree for injunctive relief. *Id.* Generally, the standard to be applied in determining whether an order or judgment has prospective application within the meaning of Rule 60(b)(5) is whether it is executory or involves the supervision of changing conduct or conditions by the court. *Id.* Here, however, no one argues that the Rule 60(b)(5) motion was not the proper vehicle for seeking the relief sought by OHP.

ciencies in the notes and mortgage, which OHP claims are ambiguous. Saro responds that admission of the affidavits would violate the Parol Evidence Rule in that the documents involving the mortgage transaction are clear and unambiguous on their face.

We think the initial matter to be resolved is whether or not the Parol Evidence Rule is dispositive of the Rule 60(b)(5) motion. We hold that it is not. The trial judge appeared to have viewed the matter before him as a trial of Saro's rights to judgment on the promissory notes. It ruled:

> [T]his court denies the relief requested by [OHP] in the 60(b)(5) motion on the grounds that the issues were not timely raised and even if they had been timely raised, do not constitute defenses to the judgment obtained by Saro. The agreement of the parties is contained in the documents and is clear and unambiguous and may not be modified or varied by parol evidence. OHP had the unconditional obligation to pay the amounts due under the note[s] to Saro and is not entitled to any credit or set-off for any sums which Saro may have owed to third parties. OHP is not asked to pay any sum in excess of the amount agreed to be paid under its note[s].

The Rule 60(b)(5) motion, unlike the suit on the promissory notes, addresses the right of the trial court to modify the final judgment entered on the notes based on the historical power of a court of equity to modify its decrees in light of subsequent conditions that make it inequitable that the judgment should have prospective application. *Evans v. Gunter*, 294 S.C. 525, 366 S.E. (2d) 44 (Ct. App. 1988); *see also Johnson v. Johnson*, — S.C. —, 425 S.E. (2d) 46 (Ct. App. 1992); *Smith Companies of Greenville, Inc. v. Hayes*, — S.C. —, 428 S.E. (2d) 900 (Ct. App. 1993).

Of course, posttrial motions may be heard on affidavits. *See Santee Portland Cement Corp. v. Mid-State Redi-Mix Concrete Co., Inc.*, 273 S.C. 784, 260 S.E. (2d) 178 (1979) (affidavits and documents submitted); *Gaskins v. California Insurance Co.*, 195 S.C. 376, 11 S.E. (2d) 436 (1940) (affidavit of counsel submitted); *see also* Rule 43(e), SCRCP. However, the facts stated in the affidavits must be admissible evidence. *See* Rule 56(e), SCRCP. We hold that the operative

portions of the affidavits dealing with the attorneys opinions of the "intent and purpose of the wrap-around promissory note" and the attorneys' intent in drafting the note and mortgage documents are inadmissible. However, other portions of the affidavits which merely recite provisions of the promissory notes and wrap-around mortgage are admissible. Nevertheless, the failure of the trial court to consider the admissible portions of the affidavits does not constitute reversible error because that evidence is cumulative to other evidence in the record.[4]

The facts of this case give rise to at least a *prima facie* case of inequity. The evidence clearly shows OHP executed in favor of Saro a document entitled "Wrap-around Mortgage of Leasehold Agreement" which referred to the notes, the subject of the summary judgment action. The mortgage provides that Saro would continue to be responsible for the prior indebtedness.[5] The $1,000,000 note states it is secured by a "Wrap-around Mortgage of Leasehold Agreement of even date."[6] In accordance with general principles of contract construction, the trial court must give effect to the intention of the parties to the wrap-around mortgage transaction if it can be done without offending settled principles of contract law. *United Dominion Realty Trust, Inc. v. Wal-Mart Stores, Inc.*, 307 S.C. 102, 413 S.E. (2d) 866 (Ct. App. 1992). In the absence of anything indicating a contrary intention, where instruments are executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction, courts will consider and construe the instruments together. *Cafe Associates, Ltd. v. Gerngross*, 305 S.C. 6, 406 S.E. (2d) 162 (1991). Thus, the notes and mortgage must

---

[4] We also hold, in view of our ruling limiting the admissible portions of the affidavits, Saro's contention that the admission of the affidavits violate the attorney-client privilege has no merit.

[5] Saro makes much of the provision in the mortgage which did not bind Saro to pay the prior indebtedness after default by OHP in its payments to Saro. We think that the obvious intent of this provision is to obviate any express or implied promise by Saro to OHP to continue to make payment on its obligation to the Bhambhanis after OHP defaulted which in turn could give rise to an implied default by Saro in its obligation to OHP. We do not think the provision has the effect of waiving OHP's right to receive credit for the satisfaction of the Bhambhanis obligation which was part of the note balance on which Saro obtained its summary judgment.

[6] The $350,000 note is not in the record.

be considered together to determine the intent of the parties to the mortgage transaction which intention it seems to us, is relevant to the application of the proceeds from the prior mortgage foreclosure. Such intention necessarily bears upon the equities of the parties at this time.

Absent an express agreement, implied covenants are used in real property law to further effectuate the intentions of the parties as reflected in the terms used in the instruments. An implied covenant is based on the surrounding circumstances, the documents as a whole and the terms expressed in the written instruments. Implied covenants will be invoked only when necessary to effectuate the intentions of the parties. Therefore, whatever may fairly be implied from the terms of or nature of an instrument is, in the eyes of the law, contained in it. 17A Am. Jur. (2d) *Contracts* § 379 (1991).

All indications from the record are that this wrap-around transaction was of the conventional type found in commercial real estate financing. Under conventional wrap-around financing, a purchaser delivers to the seller a promissory note which includes, or "wraps around," the principal balance for a prior indebtedness. The purchaser expressly assumes no obligation for paying the underlying indebtedness, and he accepts title subject to the lien of the underlying indebtedness. *Summers v. Consolidated Capital Special Trust,* 783 S.W. (2d) 580 (Tex. 1989). A wrap-around mortgage differs from a conventional second mortgage in that the face amount of the wrap-around mortgage contains an amount equal to the sum of the principal balance on an existing mortgage note plus any additional funds advanced by the wrap-around lender. *Mitchell v. Trustees of U.S. Mut. Real Estate Inv. Trust,* 144 Mich. App. 302, 375 N.W. (2d) 424, 428 (1985). It also incorporates an agreement between the parties that the seller/mortgagee will be responsible for payment of the prior mortgage indebtedness. *Prince George's County v. McMahon,* 59 Md. App. 682, 477 A. (2d) 1218 (1984); *Western Federal Sav. & Loan Ass'n v. Atkinson Financial Corp.,* 747 S.W. (2d) 456, 459 (Tex. App. — Fort Worth, 1988). Use of the wrap-around mortgage is a mutually exclusive alternative to a conventional straight assumption of the prior mortgage indebtedness by the new purchaser. *Adams v. George,* 119 Idaho 973, 975, 812 P. (2d) 280, 282 (1991).

During the hearing on the motion for summary judgment, OHP contended summary judgment was improvident because "[Saro] must exercise its rights to pursue remedies set forth in its security documents prior to the bringing the action."[7] That position was rejected by the court in view of the fact Saro had waived its rights in the collateral and was proceeding on the notes alone. It seems incongruous then that Saro should argue that the very collateral it relinquished all interest in[8] was utilized to satisfy its obligation to the Bhambhanis, yet now argues that OHP is not entitled to any credit against its judgment to the extent the Bhambhanis' foreclosure sale satisfied Saro's obligation to the Bhambhanis. Moreover, the record strongly infers that the only new consideration advanced by Saro to OHP at the time of the sale was the difference between the balance on the Bhambhanis' mortgage and the $1,450,000 sales price.

We are cognizant of the fact that motions for relief under Rule 60(b) are addressed to the discretion of the court and appellate review is limited to determining whether the trial court abused its discretion. *Coleman v. Dunlap*, 303 S.C. 511, 402 (S.E. (2d) 181 (Ct. App. 1991), *aff'd* 306 S.C. 491, 413 S.E. (2d) 15 (1992); A. Wright & A. Miller, *Federal Practice and Procedure, Civil* § 2857. Because the trial judge did not consider OHP's motion with the view of determining whether or not it was inequitable for Saro's judgment to have prospective application, we reverse and remand for further consideration consistent with this opinion. In doing so, the trial court is permitted to take additional evidence regarding the inequity of permitting the judgment to have prospective operation. Should the trial court find it is inequitable for Saro's judgment to have prospective effect, then,

---

[7] This statement is taken from the trial court's order granting Saro's motion for summary judgment. We view this argument as encompassing the contention that because the wrap-around notes included the indebtedness owed by Saro to the Bhambhanis, that the foreclosure proceeding needed to be concluded and a determination made as to status of that indebtedness before the court could accurately compute the "true debt" owed by OHP to Saro. *See* Goren & Meyer, *Foreclosing the Wraparound Mortgage: Practical Consideration and the Emergence of Texas Case Law*, 1988 Tex. B.J. 1051 (explaining what is "true debt").

[8] At the summary judgment hearing, counsel for Saro stated: "The mortgage is not being sued upon, and [this] is a suit directly on the note. They have given up the—the right to foreclose on the mortgage."

and in that event, it shall determine what credit OHP is entitled to against the judgment and modify the judgment accordingly.

## II.

In the original summary judgment, the trial court granted Saro $55,000 in attorney fees based on an affidavit presented at the hearing and a provision of the promissory note that allowed attorney fees of 15% on the full amount due. In a motion for reconsideration Saro asked for an increase in fees because the provision in the note allowed a 15% attorney fee rather than merely a reasonable fee as awarded by the court. Saro claimed its tardy assertion of this right was justified because *Dedes v. Strickland,* — S.C. —, 414 S.E. (2d) 134 (1992) had just been published, in which this Court stated the contractual provision would govern the award of attorney fees when there is such a provision. The trial court agreed with Saro and raised the attorney fee award to over $160,000, representing 15% of the indebtedness at the time of the order.

The *Dedes* case did not announce new law, but simply expressed "a well established principle of law." 414 S.E. (2d) at 137. Consequently, the decision in the *Dedes* case following summary judgment in this case provides no ground for postjudgment relief. Therefore, we reverse the order of the trial court insofar as it increased the attorney fees.[9]

Reversed and remanded.

HOWELL, C.J., and SHAW, J., concur.

[9] Although not argued by OHP, and, thus, not a basis for reversal, a motion under Rule 60(b)(1) and 60(b)(2) is an improper vehicle for obtaining a modification of a final judgment based on a change in or a mistaken understanding of the law. *See Wright v. Cordesville Pentecostal Holiness Church,* — S.C. — , 426 S.E. (2d) 772 (1993); *Greenville Income Partners v. Holman,* 308 S.C. 105, 417 S.E. (2d) 107 (Ct. App. 1992).