590 S.E.2d 502

Alice C.G. PERRY, Emily Mitchell, Eliza Tremble, and Doris Green, Respondents,

v.

HEIRS AT LAW and Distributees OF Charles GADSDEN, C.H. Gadsden, Cecil S. Gadsden, C.S. Gadsden, Louise Gadsden, Cain Gadsden, John Gadsden, Lula Nelson, Louis Gadsden, Herman Gadsden, Carrie Gadsden, Estella Gadsden, Mattie Gadsden, United States Department of Agriculture, Farmers Home Administration, South Carolina Electric and Gas, Hazel Point Partnership, Luther Major, Martha Major, Queenie Taylor, Dolly Fripp, Beaufort–Jasper Comprehensive Health Services, Inc., also, the following persons believed to be living, Cecil J.

Gaston, Jr. a/k/a Cecil J. Gaston, Cornelius Gaston a/k/a Cornelius Gadsen, Herman Gaston, Lisa Roacher, Linda Mason, Herbert Mason, Willis Gaston, and Louise Gaston a/k/a Louise Gadson, and all heirs at law, devisees, or persons unknown claiming by, under or through any of the above-named persons, John Doe or Mary Roe, being fictitious names designating a class of persons, or a legal entity, infants, incompetents, persons in the military service, if any, known or unknown, who may be an heir, distributee, devisee, legatee, issuee, aliente, administrator, executor, creditor, successor or assign having or claiming to have any right, title, interest, estate in or lien upon the real estate described in the Complaint herein, Defendants,

of whom Heirs at Law and Distributees of Charles Gadsden, C.H. Gadsden, Louise Gadsden, Cain Gadsden, John Gadsden, Lula Nelson, Louis Gadsden, Herman Gadsden, Estella Gadsden, Mattie Gadsden are the Appellants.

No. 3691.

Court of Appeals of South Carolina.

Submitted Oct. 6, 2003.

Decided Nov. 3, 2003.

Rehearing Denied Jan. 22, 2004.

44

Mary P. Miles, of West Columbia, for Appellants.

Louis O. Dore, Cheryl V. Doe and Thomas A. Holloway, all of Beaufort, for Respondents.

PER CURIAM:

More than four years after the master-in-equity ordered the partition of the 110.54–acre tract of land at the heart of this litigation, Gadsden filed a Rule 60(b), SCRCP motion to set aside the partition order, alleging fraud on the court and inequitable prospective application of the order. The trial court denied the motion. Gadsden appeals. We affirm.

## FACTS AND PROCEDURAL HISTORY

On February 13, 1990, Alice C.G. Perry, Emily Mitchell, Eliza Tremble, and Doris Green ("Respondents") brought an action against their uncle Cecil J. Gadsden, Jr. and the heirs of their grandfather Cecil J. Gadsden, Sr. (collectively "Gadsden"), seeking the partition of 110.54 acres of land occupied by Cecil J. Gadsden, Jr. (Cecil, Jr.), as well as punitive damages and an accounting. (R. at 3.) The master determined the various heirs' interests in the property and awarded $100 in punitive damages, finding Cecil, Jr., had defrauded the heirs. The master ordered the parties to devise a partition plan within thirty days. When the parties failed to produce a plan, the master ordered a public sale of the property.

Gadsden appealed, and this court held that the master correctly found that Gadsden had defrauded the heirs, but ruled that the property should have been partitioned in kind rather than sold. *Perry v. Heirs at Law & Distributees of Gadsden*, 313 S.C. 296, 437 S.E.2d 174 (Ct.App.1993). After

granting Gadsden's petition for certiorari, the Supreme Court of South Carolina affirmed our decision and remanded to the master to partition in kind. *Perry v. Heirs at Law & Distributees of Gadsden,* 316 S.C. 224, 449 S.E.2d 250 (1994).

On remand, the master entered a judgment against Cecil, Jr. and in favor of ten respondents in the amount of $151,146.27. Cecil, Jr. appealed again asserting that he had been wrongfully denied credit against the judgment for certain timber cultivation expenses and distributions to the heirs over the years. We affirmed the master's decision in an unpublished opinion.

To effectuate the partition mandated by our decision, partition commissioners were appointed by the master. The court empowered the commissioners to hire surveyors and appraisers as needed. (R. at 25.) In determining the appropriate division of the property, the commissioners considered, *inter alia,* the testimony of a licensed appraiser that the fair market value of the property was $354,000.00 as of February 9, 1995. (R. at 32.) Using this value as a starting point, the commissioners adjusted the value of the property to coincide with the increase in value of other properties in the immediate vicinity over the previous two years. (R. at 33.) Adopting a per annum increase of ten percent, the commissioners determined the current fair market value of the property to be $424,800.00. (R. at 33.) Based on the commissioners' report, the master entered an order in partition on February 20, 1998 that left Gadsden with title to 4.26 acres of the 110.54 acre tract. (R. at 37–39.)

More than four years after the 1998 partition order was entered, Gadsden filed a motion to reopen the judgment pursuant to Rule 60(b), SCRCP, asserting the $424,800.00 value assigned to the property by the commissioners was "so incorrect as to amount to fraud upon the Court." (R. at 61.) By order dated May 3, 2002, the trial court denied Gadsden's motion. This appeal followed.

### STANDARD OF REVIEW

A party seeking to set aside a judgment pursuant to Rule 60(b) has the burden of presenting evidence entitling him to the requested relief. *Bowers v. Bowers,* 304 S.C. 65, 67, 403

S.E.2d 127, 129 (1991). Whether to grant or deny a motion under Rule 60(b) is within the sound discretion of the trial judge. *Coleman v. Dunlap*, 306 S.C. 491, 494, 413 S.E.2d 15, 17 (1992). On review, we are limited to determining whether the trial court abused its discretion in granting or denying such a motion. *Saro Invs. v. Ocean Holiday P'ship*, 314 S.C. 116, 441 S.E.2d 835, 840 (Ct.App.1994).

## *LAW/ANALYSIS*

### I. Fraud Upon The Court

 Although other motions to reopen judgments based on fraud must be filed within a year of the judgment or order, Rule 60(b) allows a party to seek relief from an order for "fraud upon the court" after the expiration of one year. Fraud upon the court is a narrow and invidious species of fraud that "subvert[s] the integrity of the Court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Chewning v. Ford Motor Co.*, 354 S.C. 72, 78, 579 S.E.2d 605, 608 (2003). Like all other types of fraud, proving fraud upon the court requires showing that the perpetrator acted with the intent to defraud, for there is no such thing as accidental fraud. *See Chewning*, 354 S.C. at 78, 579 S.E.2d at 608 (" 'Fraud upon the court,' whatever else it embodies, requires a showing that one has acted with an intent to deceive or defraud the court."); BLACK's LAW DICTIONARY 660 (6th ed. 1990) ("As distinguished from negligence, [fraud] is always positive, intentional.").

Here, Gadsden's failings are several. First, Gadsden has not met his burden of showing fraudulent intent. In fact, Gadsden has failed to even allege the existence of fraudulent intent. Instead, Gadsden merely states that the "appraised value of $424,800.00 as applied by the commissioners to the realty in question is grossly insufficient and seriously understates the actual value of the property." (R. at 59.) Even if the value applied by the commissioners understated the property's value, any undervaluation would not amount to fraud unless the commissioners adopted the value with fraudulent intent. Gadsden has failed to assert this is the case. More-

over, nothing in the record suggests that the commissioners acted fraudulently.

Gadsden has not supported his charge of insufficiency of value with anything of an evidentiary nature. Gadsden has neither asserted what the "actual value of the property" is, nor offered affidavits in support of such an assertion. To this end, Gadsden has asked this Court to take judicial notice of the land's appreciation in value to support his claim. This, we cannot do. Gadsden cannot escape his burden of establishing the essential elements of fraud by passing that duty to the court. We hold Gadsden's allegation of insufficiency of value is so deficient that we would be compelled to find the trial court abused its discretion had it granted his motion.

## II. Inequitable Prospective Application

■ Rule 60(b)(5), SCRCP, provides that judgments may be set aside if "the judgment has been satisfied, released, or discharged, or a prior judgment upon which it has been based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." Rule 60(b)(5) is based on the historical power of a court of equity to modify its decree "in light of subsequent conditions." *Mr. G v. Mrs. G*, 320 S.C. 305, 311, 465 S.E.2d 101, 107 (Ct.App.1995). Gadsden asserts that this case fits under the "prospective application" language of the Rule. We disagree.

First, although motions under 60(b)(5) are not subject to the requirement that they be filed within one year of the judgment, they still must be filed within a reasonable time. *Evans v. Gunter*, 294 S.C. 525, 528, 366 S.E.2d 44, 46 (Ct.App.1988). While we are reluctant to proclaim that four years is a per se unreasonable period of time, Gadsden, who bore the burden of showing the propriety of his motion, has failed to proffer an argument as to why we should find that a four-year delay is reasonable in this case.[1] We therefore affirm the trial court's holding that Gadsden's 60(b)(5) motion is untimely.

---

1. At one point Gadsden does offer that the delay was "because [Appellants] lacked the information necessary to attack the judgment until that time. Once the data were in hand, however, appellants acted promptly to assert their rights." (Final Reply Br. of Appellants at 2.) Not only has Gadsden failed to disclose to the Court what this information is that

■ Second, a ruling that a partition order has prospective application would be inappropriate and an affront to the commonly understood meaning of the term "prospective application." The test typically applied to determine whether an order has prospective application is "whether it is executory or involves supervision of changing conduct or conditions by the court." *Saro Invs. v. Ocean Holiday P'ship,* 314 S.C. 116, 120, 441 S.E.2d 835, 838 n. 3 (Ct.App.1994). For example, injunctions ordinarily have prospective application. *See, e.g., Binkley v. Rabon Creek Watershed Conservation Dist. of Fountain Inn,* 348 S.C. 58, 558 S.E.2d 902 (Ct.App.2001). Partition orders, on the other hand, are executed orders because they mandate a one-time change in the ownership of property. As a consequence, Gadsden's motion fails for being wholly outside the scope of Rule 60(b)(5).

**AFFIRMED.**

HUFF, BEATTY, JJ., and CURETON, Acting Judge, concur.

---

only became available after four years, but also one cannot help but notice that the forgoing sounds suspiciously like a newly discovered evidence argument, which would be time barred under Rule 60(b)(2), SCRCP.