17293

W. A. RUSH, J. P. RUSH, SR., TURNER RUSH, MRS. S. B. THOMPSON, J. M. THOMPSON, JAMES McFADDEN and D. N. BAKER, Appellants, v. TROY THIGPEN, Respondent.
(98 S. E. (2d) 245)

*Messrs. Henry E. Davis* and *George W. Keels,* of Florence, *for Appellants,*

*Messrs. McEachin, Townsend & Zeigler,* of Florence, and *James Hugh McFaddin,* of Manning, *for Respondent,*

May 15, 1957.

LEGGE, Justice.

Appellants, owners of separate tracts of land, located for the most part in Florence County, surrounding a tract of about three hundred acres owned by the respondent, brought this action against him for the purpose of determining the boundaries between his property and theirs. The cause was tried before the Honorable G. Badger Baker, Judge of the Twelfth Circuit, without a jury; and from his decree of June 20, 1956, comes this appeal.

The allegations of the complaint are, in substance, as follows:

(1) That the defendant claims title to approximately three hundred acres of land located for the most part in Florence County, known as the Hudson Mill Tract, consisting principally of an old mill pond, and embracing only a small area of upland; and that the plaintiffs W. A. Rush, J. P. Rush, Sr., Turner Rush, Mrs. S. B. Thompson, J. M. Thompson, James McFadden and D. N. Baker own in fee simple and

are in possession of tracts of land in the said county that practically surround the said mill pond tract claimed by the defendant.

(2) That the plaintiffs and the defendant respectively claim title to their properties under deeds and other instruments in writing; and that a controversy has arisen between them with respect to the location of the boundary lines between the plaintiffs' lands and the defendant's mill pond tract, the proper location of said boundary lines depending upon the construction and validity of the instruments constituting the chains of title under which the respective parties claim.

(3) That because the boundary lines between the lands of the plaintiffs and the defendant's property are an entirety and cannot be determined piecemeal by separate suits the plaintiffs have a community of interest which will be affected by the judgment, and are made parties under the provisions of Section 10-2008 of the 1952 Code.

(4) That efforts to reach an agreement with the defendant to establish the boundary lines by survey without litigation have failed.

(5) That the defendant has entered upon the lands of some of the plaintiffs and has cut and removed timber therefrom, and threatens and intends to cut and remove timber from all the lands of the plaintiffs involved in this action.

(6) That the plaintiffs are without adequate remedy at law for the trespasses of the defendant, committed and threatened.

(7) That some of the logs cut from the property of one or more of the plaintiffs have not yet been disposed of by the defendant, and he should be enjoined from disposing of them pending the determination of this action.

The prayer is for a decree "adjudging and declaring the rights of the plaintiffs and the defendant respecting the land and properties involved in this action"; enjoining the defendant from trespassing on and cutting and removing tim-

ber from the lands of the plaintiffs and from disposing of the logs already cut therefrom; and requiring the defendant to account for the value of any of the plaintiffs' logs already disposed of by him.

. The answer, in addition to a general denial, alleges that the defendant is the owner in fee simple and in possession of the Hudson Mill Pond Tract by virtue of a deed from Frankie Floyd recorded in Florence County in Deed Book 121 at page 277, and that his boundary line is the high water mark of Hudson Mill Pond.

The substantial issue at the trial was whether the correct boundary between respondent's property and the properties of appellants was as shown on a plat made by E. J. Smith, Surveyor, in October, 1925, upon which the appellants relied, or as shown on a plat made for the respondent by Ebert Floyd, Surveyor, in January 1954. The trial judge held that the boundary as shown on the Floyd plat was the true boundary line.

The exceptions assign error on the part of the trial judge:

(1) In refusing to grant an order of survey;

(2) "In holding that appellants must recover on the strength of their title, when no issue of title was involved";

(3) In not holding that the respondent was bound by the Smith plat; and

(4) In accepting the boundary as shown on the Floyd plat.

These questions will be considered in the order stated.

On or about March 18, 1954, respondent's counsel served notice upon counsel for the appellants that they would apply before Judge Baker on April 2, 1954, for an order of survey in accordance with Circuit Court Rule 36. By letter of March 29, 1954, appellants' counsel advised counsel for the respondent that they would consent to such an order of survey; but no order was taken. When the case was called for trial about two weeks prior to July 1, 1955, appellants' counsel stated

they understood that the hearing was to be on the motion for an order of survey; respondent's counsel stated that they were ready to go to trial on the merits and that the motion for survey was withdrawn. Appellants' counsel then contended that the motion for survey could not be withdrawn after they had given their consent for such order. The court rejected this contention and directed that the case proceed to trial; whereupon appellants' counsel requested a continuance for the purpose of enabling the appellants to have a survey made. This request was granted and the case was set for trial on July 1, 1955. On that day appellants appeared with their counsel and proceeded to trial without any further motion or objections relative to a survey or an order of survey.

Appellants contend that the court erred in not issuing an order of survey because of Section 57-452 of the 1952 Code, which provides:

"If any cause be depending in any circuit court or within its jurisdiction wherein the title or boundaries of lands shall be brought into dispute, the judge of the court shall appoint surveyors at the nomination of the parties, to survey such lands, at the charge of such parties, and to return such survey, on oath, at the next sitting of the court."

This statute is not mandatory. As was said in *Cruikshanks v. Frean,* 3 McCord, 14 S. C. Law, 84:

"Either party may resort to it when for the want of other evidence of identity it becomes necessary; but when they think proper to put their rights upon other evidence, it would be a strange construction to compel them to provide more than was necessary * * *." See also *Thomas v. Jeter,* 1 Hill, 19 S. C. Law, 380; *Patterson v. Crenshaw,* 32 S. C. 534, 11 S. E. 390; *Welsh v. Atlantic Coast Line R. Co.,* 107 S. C. 534, 93 S. E. 196.

But even if the statute were mandatory, appellants' contention cannot be sustained, for two reasons. In the first place, appellants did not request an order of

survey after the respondent had withdrawn his motion for it; instead, they asked for and were granted a two weeks' continuance to enable them to have their own survey made; and they thereby waived their right to insist upon a survey under Section 57-452. Secondly, it has not been made to appear that they have been prejudiced by the absence of a survey under that section. *Metze v. Meetze,* S. C., 97 S. E. (2d) 514.

Essentially, this is an action of trespass to try title, *Little v. Little,* 223 S. C. 332, 75 S. E. (2d) 871; and its nature was not changed by reason of its being cast under the declaratory judgment statute, *Legette v. Smith,* 226 S. C. 403, 85 S. E. (2d) 576. The trial judge correctly ruled that appellants, who were the plaintiffs, must depend for recovery upon the strength of their own title, not the weakness of that of their adversary, *Warren v. Wilson,* 89 S. C. 420, 71 S. E. 818, 992.

It appears that at some time prior to the year 1880 Hudson's Mill Pond was created by the construction of a dam and a concrete spillway at or near the lower (southern) end of Douglas Swamp; that in May, 1921, a written agreement was entered into between J. J. DuBose, then owner of the Mill Pond tract, and W. H. Player and L. C. Floyd, owners of properties adjoining it, whereby the said parties agreed that the mill dam should be destroyed and the water of the pond allowed to flow out; that the dam was destroyed shortly thereafter; and that title to the Mill Pond tract was at some time thereafter acquired by Frankie Floyd, who conveyed it to the respondent by deed dated January 19, 1948.

Appellant W. A. Rush appears to be the owner of four tracts adjoining the Hudson's Mill Pond tract, as follows:

1. A tract of 63 acres to the west of it, acquired by deed of J. F. Bland dated October 4, 1937, and deed of Lillie Mae Sowers Wilson dated September 8, 1941;

2. A tract of 50 acres to the east of Hudson's Mill Pond tract, acquired by deed of J. P. Thomas dated August 4, 1947;

3. A tract of 79 or 80 acres to the east of Hudson's Mill Pond tract, acquired by deed of L. C. Floyd dated October 18, 1932; and

4. A tract of 104 acres to the east of Hudson's Mill Pond tract, acquired under the will of his father, John W. Rush.

Appellant J. P. Rush, Sr., a brother of W. A. Rush, appears to be the owner of a tract of 98 acres to the east of Hudson's Mill Pond tract, acquired under the will of his father, John W. Rush.

Appellant J. M. Thompson appears to be the owner of a tract of 164½ acres, lying to the west of Hudson's Mill Pond tract, acquired by deed of Thompson Mercantile Company dated January 25, 1941.

The other appellants did not testify, and there is nothing in the record, other than the plats hereinafter mentioned, to indicate the area or location of their properties or how they acquired them. The Ebert Floyd plat, put in evidence by the respondent, shows as owners of the several tracts adjoining, to the west of, the Hudson's Mill Pond tract, the following: S. B. Thompson, Est.; Melvin Thompson; McFadden; D. N. Baker; Locklair, and Smith.

In evidence were the following plats, offered by the appellants:

Plat by D. G. Williams, Surveyor, June 17, 1874, of record in Clarendon County, showing three tracts, of 505 acres, 112 acres and 245 acres respectively, all situated "on the Southwest side of Douglass Swamp waters of Black River, and on the road leading to Manning Court House", surveyed for Mr. S. B. Coker; and

"Plat of Hudson Old Mill Pond" surveyed for Mr. J. J. DuBose by E. J. Smith, Surveyor, October 8, 1925.

And the following, offered by the respondent:

Plat by Samuel Tomlinson, Surveyor, December 22, 1855, showing 300 acres lying immediately east of "Douglass Swamp & Mill Pond";

Plat by Samuel Tomlinson, Surveyor, October 26, 1880, showing three tracts resurveyed and divided at the request of the heirs of A. M. Rush, as follows: No. 1, 106 acres; No. 2, 98 acres; No. 3, 98 acres; of which Nos. 2 and 3 lie immediately east of "Hudson's Mill Pond", and No. 1 lies to the east of Nos. 2 and 3;

Plat showing 80 acres, the property of William A. Rush, lying immediately east of Hudson's Mill Pond, surveyed by G. T. Floyd, C. E., November 14, 1912, and traced by him September 16, 1933; and

Plat by Ebert E. Floyd, Surveyor, January, 1954, showing "380 Acres in Florence County, S. C., belonging to Troy Thigpen, formerly known as Hudson's Mill Pond".

It appears that the pond in question was known at various times during its existence as the "Rush Mill Pond", "Hudson's Mill Pond", and "Williams & Green Mill Pond". By deed dated May 6, 1914, A. H. Williams and John A. Green, as A. H. Williams & Co., conveyed to W. T. Kennedy:

"All that tract and plantation situate, lying and being partly in the County of Florence and partly in the County of Clarendon, in the State aforesaid, primarily known as the Rush Mill, now called the Hudson's Mill, consisting of the lands in area as is covered from time to time and at all times with water for milling and manufacturing purposes up to and including high water mark surrounding the mill pond and tributaries, with the dams, water and wasteways, creeks, canals and floodgates" etc.

In 1917, W. T. Kennedy conveyed by the same description to J. J. DuBose; and the same description appears in the conveyance from Frankie Floyd to Troy Thigpen in 1948. (Devolution of the title from DuBose to Thigpen does not appear in the record.)

By deed dated September 12, 1925, and recorded in Florence County, J. J. DuBose conveyed to D. W. Alderman & Sons Co. the timber on 200 acres, more or less, of the Hudson's Mill tract, with a period of 15 years for cutting and

removal, the deed reciting that the property would be surveyed and the actual number of acres determined. Pursuant to this provision in the timber deed, E. J. Smith made his survey of October 8, 1925, before mentioned, which showed a total of 319¾ acres in the "Hudson Old Mill Pond" tract, composed as follows:

| | | |
|---|---|---|
| Field | 34 | acres |
| Open Pond | 76½ | " |
| Rail Road | 5¾ | " |
| Timber Land | 203½ | " |

The Smith plat shows the Hudson Mill Pond tract in crude outline, on which is marked only one corner, to wit: at the northeast end of the tract, a cypress. On the margin of the plat are shown 237 courses and distances. Mr. J. P. Edwards, a surveyor, testified on behalf of the appellants that a few days before the trial he had checked the line of the Smith plat on the east side of the tract, commencing with the cypress corner just mentioned; that the Smith line appeared to have been marked by side-chops on the trees; that the bearings and distances shown on the margin of the Smith plat did not coincide with the side-chopped line, and in order to keep to that line he was obliged to run three bearings different from those indicated on the plat, and to move to right or left nine times; and that, except for the cypress corner from which he started, he found no corner between adjoining landowners, but did find a "witness" to a corner between two of Mr. W. A. Rush's tracts, namely: the tract acquired by him from J. P. Thomas and the tract known as his home tract. Mr. Edwards testified that in the course of checking the Smith line he found some new markings, apparently about a year or two old, the majority of which were to the east of the Smith line.

From the old plats in evidence to which we have referred we note the following:

1. The Tomlinson plat (1855) of 300 acres shows the western boundary as the "High water mark" of "Douglass Swamp & Mill Pond".

2. The Williams' plat (1874) of 505 acres (of which the tract of 164½ acres owned by appellant J. M. Thompson is a part) does not indicate a mill pond at all, but gives the eastern boundary as "Douglass Swamp Run."

3. The Tomlinson plat (1880) of the properties of the heirs of A. M. Rush shows two corners of the western boundary, to wit: one at the northeast end of "Hudson's Mill Pond", indicated as "Hickry at high water mark", and the other at the southeast end of said pond, indicated as "Wat. ok at high water mark".

4. The G. T. Floyd plat (1912) of 80 acres, the property of William A. Rush, shows the western boundary as "Edge of Old Hudson Mill Pond".

In addition to the plats before mentioned, reference was made in the testimony of G. T. Floyd, a witness for the respondent, to a plat made by him in 1915 of a tract of 163 acres, the property of Mrs. Maggie D. Player. This plat was put in evidence only by reference to its place of record; but the witness testified without objection that when he made it Hudson's Mill Pond contained water; that his plat showed the corners as being at the water's edge; and that at the north end he found a gum tree at the water's edge already marked as a corner.

We shall refer briefly to the boundaries, on the Hudson Mill Pond side, of the several tracts belonging to the appellants respectively, as shown by deeds in evidence:

W. A. Rush, 63 acres purchased from J. F. Bland and Lillie Mae Sowers Wilson: eastern boundary, "Hudson Mill Pond".

W. A. Rush, 50 acres purchased from J. P. Thomas: western boundary, "high water marks of Hudson Mill Pond".

W. A. Rush, 79 acres purchased from L. C. Floyd: western boundary, "high water mark of Williams & Green Mill Pond".

J. M. Thompson, 164½ acres conveyed by Thompson Mercantile Company: eastern boundary, "lands of Douglas Mill and Hudson Swamp". We note, parenthetically, that this is the tract formerly owned by Mrs. Maggie D. Player, for whom G. T. Floyd made his survey in 1915 to which we have referred.

Introduced in evidence by the respondent were two other deeds, conveying a tract of 150 acres lying east of the mill pond, the first from E. W. W. Rush to L. C. Floyd in 1912, and the second from L. C. Floyd to W. A. Rush in 1930. In both of these deeds the western boundary is referred to as "high water mark of Williams & Green Mill Pond".

None of the appellants who testified appeared to have any definite idea of the location of the boundary between their properties and that of the respondent. Mr. W. A. Rush testified on cross examination that all of the tracts owned by him are bounded, on one side or the other, by the high water mark of Hudson Mill Pond, and in answer to a question by the court stated that he didn't know the location of the line between his property and the Hudson Mill Pond tract.

Mr. J. P. Rush, Sr., testified that he was familiar with the line of the E. J. Smith plat of 1925 indicated by side-chops on trees, and that he considered it as his western boundary. On cross examination he admitted knowledge of a stump at the point shown on the Tomlinson plat of 1880 as "Hickry at high water mark", which he acknowledged had been recognized as the corner between his land and that of Thomas; and he admitted that the line of the Ebert Floyd plat crossed at that stump.

Mr. J. M. Thompson was unable to say where his eastern line was, or where any corners were on that side of his property.

In regard to his survey in January, 1954, Mr. Ebert E. Floyd testified as follows:

His survey was made after reference to recorded deeds and plats in both Florence and Clarendon Counties. To determine the high water mark of what had been the Hudson Mill Pond he examined the concrete abutments of the old spillway at its southern end. On the pond side of these abutments he found a line, about four feet below the top, indicating where the water level of the pond had been. Above that line the face of the abutment was smooth, the sand and cement being still coated to the rock aggregate; below it the sand and cement appeared to have been washed away, and the rock aggregate was exposed. Running on levels at the elevation of this line, his survey around the pond passed directly over eleven corners of adjoining properties, each evidenced on the ground by "old witness" marks. He met Mr. J. P. Rush, Sr., at the corner between his tract and the Thomas tract, just north of it; together they located the "old witness" marks pointing to the stump at the corner between the two tracts. He also met Mr. W. A. Rush on his property, Mr. Rush having with him the E. J. Smith (1925) plat, and being accompanied by Mr. Gamble, a surveyor. He pointed out to them the "witness oak at high water mark" shown on the Tomlinson (1880) plat as near the corner between Mr. Rush's and the adjoining tract; and they agreed that that was the corner. These corners, as well as the other old corners found in his survey, were at the same elevation as that of the line from which the survey was begun; and so also were the 259 other corners shown on his plat.

We cannot agree with appellants in their contention that the respondent is bound by the E. J. Smith plat of 1925. There is nothing in the record to suggest that he acquiesced in it; on the contrary he testified that he didn't know of its existence until after he had bought the property. As before stated, this plat was made in connection with a fifteen-year timber deed in 1925; the rights of the grantee in that deed had expired many years before the conveyance by Frankie Floyd to the respondent

in 1948; and the plat was in no sense a necessary link in respondent's chain of title.

Nor do we find error on the part of the trial judge ▮ in determining the disputed boundary on the basis of the Ebert Floyd plat. The evidence, which we have reviewed at some length, was quite sufficient to support his conclusion.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.