480 S.E.2d 98

**Corrinne L.M. KOENIG, Respondent,**

v.

**SOUTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, Appellant.**

**No. 2608.**

Court of Appeals of South Carolina.

Heard Oct. 8, 1996.

Decided Dec. 23, 1996.

Patrick M. Teague and Frank L. Valenta, Jr., Columbia, for appellant.

Doak J. Wolfe, Columbia, for respondent.

HOWELL, Chief Judge:

Appellant South Carolina Department of Public Safety (the Department) appeals from an order requiring it to change the driving records of Respondent Corrinne Koenig to reflect a

conviction for involuntary manslaughter rather than manslaughter. We reverse.

## I.

Corrinne Koenig pled guilty to an indictment for involuntary manslaughter in Richland County arising out of the death of a pedestrian caused by the automobile she was operating. For that conviction she was sentenced by the court, and her driver's license was revoked by the Department for a period of one year. After the revocation period expired, Koenig sought to have her license reinstated by payment of the required fee and submission of proof of financial responsibility, as required by the Department. Her insurance agent, in order to compute her premium including surcharge points required under the Department of Insurance's "Merit Rating Plan," requested her driving record from the Department. These surcharges are determined based on the number of points assigned to convictions by the Department of Insurance for various categories of driving offenses. *See* 25A S.C.Ann.Regs. 69–13.1 (Supp.1995).

Koenig's driving record maintained by the Department reflected simply that she had been convicted of manslaughter. According to her insurance agent, whose testimony was submitted by affidavit, the merit rating plan assigns 20 insurance points to the crime of manslaughter but only 1 point to the crime of involuntary manslaughter. The agent stated that, had he not sought clarification from the Department, Koenig's insurance premium would have been based on the 20 points attributable to manslaughter, and would have cost Koenig an additional $1,500.00 per year.

Koenig brought an action against the Department seeking declaratory and injunctive relief to require the Department to modify her driving record to reflect a conviction for involuntary manslaughter instead of manslaughter. She argued that the Department's use of the general term manslaughter on her driving record had the potential to impose an unjust hardship on her, because her driving records are accessible to third parties who may mistakenly interpret it to mean she has been convicted of voluntary manslaughter.

The trial court denied Koenig's request for a temporary injunction. However, at the conclusion of the hearing, the parties agreed that all of the necessary evidence was before the trial court, and the proceeding was converted into one for summary judgment.

After considering the arguments of the parties, the trial court found in favor of Koenig. The trial court ordered the Department to "modify its Driver Records to delete the designation of the crime of 'manslaughter' from its records and to reflect 'involuntary manslaughter' as it pertains to the driving record of [Koenig]." This appeal followed.

## II.

All persons operating a motor vehicle on the public highways must have a valid motor vehicle driver's license. *See* S.C.Code Ann. § 56–1–20 (1991). The Department must suspend or revoke the driving privileges of a person "upon receiving notice of the conviction of such person for: (1) Manslaughter resulting from the operation of a motor vehicle; or (2) Any felony under the laws of this State in the commission of which a motor vehicle used." S.C.Code Ann. § 56–1–280 (Supp.1995).

To facilitate administration of this responsibility, section 56–1–540(2) requires the Department to file accident reports and abstracts of court records of convictions and

maintain convenient records or make suitable notations in order that an individual record of each licensee showing the convictions of such licensee and the traffic accidents in which he has been involved shall be readily ascertainable and available for the consideration of the department upon application for renewal of license and at other suitable times.

S.C.Code Ann. § 56–1–540(2) (Supp.1995).

When construing a statute, a court must seek to ascertain and effectuate legislative intent. *Spartanburg County Dep't of Soc. Servs. v. Little*, 309 S.C. 122, 420 S.E.2d 499 (1992). The cardinal rule of statutory construction is that words used in a statute must be given their plain and ordinary meaning without resort to subtle or forced construction to

limit or expand the operation of the statute. The language must be read in a sense which harmonizes with its subject matter and accords with its general purpose. *Hitachi Data Systems Corp. v. Leatherman*, 309 S.C. 174, 420 S.E.2d 843 (1992).

Contrary to Koenig's argument, nothing in these sections requires the Department to distinguish between voluntary and involuntary manslaughter. The Department is required to revoke an individual's license upon being convicted of manslaughter resulting from the operation of a motor vehicle. Manslaughter is the "unlawful killing of another without malice, express or implied." S.C.Code Ann. § 16-3-50 (Supp. 1995). The general statutory definition of manslaughter includes both voluntary and involuntary manslaughter. *State v. Gandy*, 283 S.C. 571, 573, 324 S.E.2d 65, 66 (1984), *implicitly overruled on other grounds by Casey v. State*, 305 S.C. 445, 409 S.E.2d 391 (1991); *State v. Barnett*, 218 S.C. 415, 423, 63 S.E.2d 57, 59 (1951). Therefore, whether an individual is convicted of voluntary or involuntary manslaughter, the Department's manslaughter notation on the individual's record is clearly "suitable," as required by section 56-1-540(2).

■ The fact that the Department's records are available to third parties does not change this conclusion. The statute requires the Department to maintain the records for its own use. *See* S.C.Code Ann. § 56-1-540(2) (record of each licensee "shall be readily ascertainable and available for the consideration *of the department*") (emphasis added). Accordingly, as long as its records are "suitable" and "convenient" for its own purposes, the Department need not include any additional information on driving records, even if that additional information might be useful to some third parties. The sufficiency or propriety of the information contained in the Department's records cannot be measured by the needs of a third party. Contrary to Koenig's argument, the Department does not have an obligation to anticipate the effect that the information contained in its driving records may have on the various entities that have access to the records and to supplement its records accordingly. Instead, it is the driver that has an obligation to provide full information to those entities that the driver knows may make use of his or her driving record.

The construction of a statute by an agency charged with its administration is entitled to the most respectful consideration and should not be overruled absent compelling reasons. *Home Health Serv. Inc. v. South Carolina Tax Comm'n*, 312 S.C. 324, 440 S.E.2d 375 (1994). Here, the Department's chosen method of implementing its statutory obligations is reasonable and fully satisfies the mandates of section 56-1-420. Accordingly, the order of the circuit court is hereby

**REVERSED.**

HUFF and HOWARD, JJ., concur.