536 S.E.2d 698

Allen Lee HAWKINS and Gryphon, Inc., Appellants,

v.

BRUNO YACHT SALES, INC., Beaufort County, A Political Subdivision of the State of South Carolina, and Joy Logan in the capacity of Treasurer for Beaufort County, South Carolina, Respondents.

No. 3231.

Court of Appeals of South Carolina.

Heard June 7, 2000.

Decided July 31, 2000.

Rehearing Denied Nov. 4, 2000.

356

Julius H. Hines, of Buist, Moore, Smythe & McGee, of Charleston, for appellants.

Ladson F. Howell, of Howell, Gibson & Hughes, of Beaufort; Stephen P. Groves, Sr., and Stephen L. Brown, both of Young, Clement, Rivers & Tisdale, of Charleston; and John Hughes Cooper, of Sullivan's Island, for respondents.

SHULER, Judge:

In this action to set aside a tax sale, the master-in-equity granted judgment to defendants Bruno Yacht Sales, Inc., Beaufort County, and Joy Logan. Allen Lee Hawkins and Gryphon, Inc. appeal. We reverse and remand.[1]

## FACTS/PROCEDURAL HISTORY

In July 1987 Allen Lee Hawkins accepted delivery of a 52–foot Tayana sailboat, which he christened the "LadyHawk" and documented with the United States Coast Guard. Hawkins spent more than $300,000 to acquire and outfit the boat for sailing. In December 1989, on the advice of his attorney, Hawkins transferred title of the LadyHawk to Gryphon, Inc., a Florida corporation of which he was the sole shareholder and officer. Two years later, apparently upon an order of the family court in Hawkins' divorce proceeding, Gryphon transferred the vessel back to Hawkins. The LadyHawk was then re-documented with the Coast Guard in Hawkins' name.

---

1. Although the underlying complaint is styled as a declaratory judgment action, it is actually an action to void a tax sale and as such is not transformed into one for declaratory judgment solely by invoking the Declaratory Judgment Act. *See Rush v. Thigpen*, 231 S.C. 230, 98 S.E.2d 245 (1957) (finding action for trespass to try title was not changed by being cast under declaratory judgment statute). In addition, though the final rulings herein are set forth in "order[s] of dismissal," the master clearly granted *judgment* to each defendant.

At the end of August 1995, Hawkins received two separate notices from the Beaufort County Treasurer. The notices, dated August 16 and August 24 respectively, informed Hawkins his 1994 property taxes for the LadyHawk in the amount of $2,814.67 were delinquent and that the boat was subject to sale on October 2. Hawkins immediately retained an attorney to dispute the original tax assessment; however, Hawkins did not pay the taxes and the vessel was sold to Bruno Yacht Sales, Inc. of Wilmington, Delaware for the exact amount of the delinquency. Hawkins learned of the sale on December 16, 1995 when law enforcement officers in Fort Lauderdale, Florida evicted him and took possession of the LadyHawk.

On December 19 Hawkins filed a petitory action in federal district court to quiet title in the LadyHawk, and the following day the court authorized a Warrant of Arrest in Rem for the vessel. Bruno in turn filed a motion to vacate the arrest and dismiss the action, asserting it was the LadyHawk's lawful owner as a result of the tax sale. On March 7, 1996, the district court held a show cause hearing on Bruno's motion. Ultimately, the court determined it lacked jurisdiction over the petitory action because Hawkins was neither the current owner of the LadyHawk nor the real party in interest.[2] Consequently, on July 16 the court dismissed Hawkins' action without prejudice and vacated the arrest of the LadyHawk. In so doing, however, the district court specifically noted the dismissal was not an adjudication of title to the vessel.

On August 1, 1996, Hawkins brought the instant action to set aside the sale of the LadyHawk and restrain Bruno from selling or otherwise encumbering the vessel. The circuit court ordered the case referred to the Master–in–Equity for Beaufort County. On March 5, 1998, Bruno motioned the court to dismiss the complaint or, alternatively, grant summary judgment on the basis of judicial estoppel because Hawkins had claimed in the prior federal proceeding that Gryphon, Inc., not he, was the LadyHawk's true owner. The master declined to grant the motion and Hawkins filed a motion to join Gryphon, Inc. as a necessary party. The master granted this motion on

---

2. This conclusion was based on Hawkins' evidence indicating title to the LadyHawk did not pass to him from Gryphon, Inc. in 1992 because the bill of sale lacked his signature.

May 29, 1998. As a result, Hawkins filed a third amended complaint on June 18 adding Gryphon, Inc. as a party plaintiff.

The case was tried before the master on July 1, 1998.[3] At the close of the evidence, Hawkins moved to amend his complaint to assert additional causes of action for fraud and conversion plus a claim for money damages. The motion was based upon the fact that he had learned, just days earlier, that the LadyHawk had been sold in July 1997 despite Bruno's repeated assurances to the contrary.[4] The master took the motion under advisement and reserved ruling. On May 11, 1999 the master issued an order upholding the tax sale and entering judgment in favor of the defendants. As an additional ground for the judgment, the master ruled Hawkins was judicially estopped from asserting an ownership interest in the LadyHawk because, in the previous federal proceeding in Florida, he had argued Gryphon, Inc. owned the vessel.[5] In addition, because Hawkins' ancillary claims were contingent upon a favorable disposition on the tax sale issue, the master denied his motion to amend the complaint.

Pursuant to Rule 59(e), SCRCP, Hawkins filed a motion to alter or amend the judgment. On May 25, 1999, the master amended his prior order and addressed more specifically Hawkins' arguments regarding the validity of the tax sale. Hawkins now appeals, arguing the master erred in applying the doctrine of judicial estoppel to bar his claims and in finding the sale of the LadyHawk valid despite the Beaufort County Treasurer's failure to comply with statutory requirements for the seizure and sale of delinquent tax property.

---

3. Prior to trial the parties stipulated that the LadyHawk was in fact subject to Beaufort County property taxes for the 1994 tax year.

4. Discovery was completed the weekend before trial. Therein, Hawkins discovered a Bill of Sale from Bruno to Treasure Auto Sales of Miami, Florida, dated July 11, 1997.

5. In arguing the tax sale of the LadyHawk was void, Hawkins had presented the 1992 bill of sale to the court as evidence that Gryphon, Inc. was the true owner of the vessel. Although the Coast Guard redocumented the LadyHawk in Hawkins' name based on the bill of sale, Hawkins, as corporate officer of Gryphon, Inc., had printed his name on the document but failed to affix his signature.

## LAW/ANALYSIS

### Standard of Review

■ An action to set aside a tax sale lies in equity. *See Godfrey v. Webb,* 277 S.C. 246, 285 S.E.2d 883 (1982); *Folk v. Thomas,* 336 S.C. 466, 520 S.E.2d 327 (Ct.App.1999). Accordingly, this Court may take its own view of the preponderance of the evidence. *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976); *Folk,* 336 S.C. at 469, 520 S.E.2d at 329.

## I. Validity of the Tax Sale

### A. Levy Notices

■ Hawkins first argues the master erred in upholding the tax sale because the County's levy notices were defectively worded. We agree.

The procedure for collecting delinquent property taxes is governed by statute. *See* S.C.Code Ann. § 12–51–40 (Supp. 1999); *Durham v. United Companies Fin. Corp.,* 331 S.C. 600, 603, 503 S.E.2d 465, 467 (1998) ("The sale of the property of a defaulting taxpayer is governed by statute."); *F.C. Enterprises, Inc. v. Dibble,* 335 S.C. 260, 516 S.E.2d 459 (Ct.App.1999). Because Hawkins does not dispute he owed and failed to pay 1994 property taxes on the LadyHawk in Beaufort County, the treasurer properly issued an execution authorizing the tax collector to levy on and sell the vessel. *See* S.C.Code Ann. § 12–45–180(A) (Supp.1999) ("If the taxes, assessments, and penalties are not paid before the seventeenth day of March, the county treasurer shall issue his tax execution to the officer authorized and directed to collect delinquent taxes...."). Thereafter, the County was required to mail a delinquency notice informing Hawkins that, in the event the full amount due was not paid, the LadyHawk "shall be advertised and sold to satisfy the delinquency." S.C.Code Ann. § 12–51–40(a) (Supp.1999). In addition, since the taxes remained unpaid, the tax collector was obliged to take exclusive possession of so much of the LadyHawk as was necessary to satisfy the tax debt plus penalties and costs. *Id.* at § 12–51–40(b).

To accomplish this constructive possession, or "levy by distress," the statutory scheme directs the County to mail the

taxpayer a copy of the delinquency notice which *"shall* specify that if the taxes, assessments, penalties, and costs are not paid *before a subsequent sales date,* the property must be duly advertised and sold...." *Id.* (emphasis added). In an effort to effectuate this mandate, Beaufort County employs a rubber stamp to imprint the following message upon delinquency notices in red ink:

IF NOT PAID ON OR BEFORE 31 AUGUST THIS PROPERTY WILL BE DULY ADVERTISED AND SOLD FOR DELINQUENT TAXES AS DESCRIBED ABOVE ON THE FIRST MONDAY IN OCTOBER, THIS YEAR. RETURN OF THIS "CERTIFIED RECEIPT" SHALL BE DEEMED EQUIVALENT TO "LEVYING BY DISTRESS[.]"

By indicating payment is required "on or before 31 August," this stamped annotation clearly contradicts the explicit statutory language requiring notice to the taxpayer that if the taxes are not paid *before the date of sale,* in this instance October 2nd, the property will be sold. Moreover, the County compounded its error by sending Hawkins a notice letter, dated August 24, which also contained the stamped annotation in red ink and read in pertinent part:

The attached tax notice is delinquent. The property is subject to sale at the October 2, 1995 delinquent tax sale. Receipt of this notice constitutes levy by distress.

All tax payments must be received by September 15, 1995 to avoid your name and property being advertised in The Beaufort Gazette and The Island Packet.

Although the defendants maintain the August 31 and September 15 deadlines set forth were merely dates by which Hawkins should have tendered payment in order to avoid the *advertising* of the LadyHawk for sale, we agree with Hawkins that these notices give the clear impression, contrary to statutory mandate, that he was required to pay the taxes, penalties and costs at least two weeks before the October 2 "subsequent sales date." We further agree the imposition of these artificial deadlines rendered the County's attempted notice inadequate.

## B. Restricted Delivery Mail

■ Hawkins next argues the tax sale was invalid because the treasurer failed to send the levy notices via "restricted delivery" mail. We agree. Section 12–51–40(b) provides, in relevant part:

> In the case of real property, exclusive possession is taken by mailing a notice of delinquent property taxes ... to the current owner of record ... by "certified mail, return receipt requested-restricted delivery". In the case of personal property, exclusive possession is taken by mailing the notice ... to the person at the address shown on the tax receipt or to an address of which the officer has actual knowledge. The return receipt of the "certified mail" notice is equivalent to "levying by distress".[6]

*Id.* Here, the County sent the required notice to Hawkins at 50 Palmetto Bay Road, Box 200, Hilton Head, South Carolina. While the notice was sent "certified mail, return receipt requested," the County failed to restrict its delivery to Hawkins. Because the Palmetto Bay Road address directed Hawkins' mail to a post office box in his wife's name at Island Postal, a private mail service, Hawkins did not receive the August levy notices until his wife picked up his mail and forwarded it to him in Fort Lauderdale. Hawkins, therefore, first received these notices at the end of August 1995.

Although Hawkins acknowledges the notices were sent by "certified mail, return receipt requested," he argues they were defective in that delivery was not restricted to him personally. On the other hand, the defendants contend, and the master found, that the "restricted delivery" requirement applies only to real property, not personalty. We agree with Hawkins that the statute requires restricted delivery when levying by distress on both real and personal property.

■ Obviously, the "restricted delivery" language at issue only appears in the statute's sentence specifically referencing

---

6. At the time of the levy against Hawkins, the statute required notice by "certified mail, return receipt requested, deliver to addressee only." S.C.Code Ann. § 12–51–40(b) (Supp.1994). The legislature amended this subsection in 1998 to substitute "restricted delivery" for "deliver to addressee only." The meaning, however, remains the same. *See In re Ryan Inv. Co., Inc.,* 335 S.C. 392, 517 S.E.2d 692 (1999).

real property. The statute, however, must be read as a whole. *See Whitner v. State*, 328 S.C. 1, 492 S.E.2d 777 (1997) (in construing statutes, courts should consider not only the language of the particular clause being construed, but each word and its meaning in conjunction with the purpose of the whole statute and policy of the law); *South Carolina Coastal Council v. South Carolina State Ethics Comm'n*, 306 S.C. 41, 45, 410 S.E.2d 245, 247 (1991) ("[I]n interpreting a statute, one does not look merely at a particular clause in which a word may be used, but rather looks at the word and its meaning in conjunction with the purpose of the whole statute, and in light of the object and policy of the law.").

When read in context, it becomes apparent the "restricted delivery" language applies to personal property, as the statute clearly indicates delinquency notices on *all* property are sent via certified mail with a return receipt attached. *See* S.C.Code Ann. § 12–51–40(b) (Supp.1999) ("The return receipt of the 'certified mail' notice is equivalent to 'levying by distress'."). In addition, subsection (c) of the statute provides for the physical seizure of property, both real and personal, "in the event the 'certified mail' notice has been returned...." *Id.* at § 12–51–40(c). Because the sole reference in the entire statute to certified mail is that in subsection (b) requiring notice by "certified mail, return receipt requested-restricted delivery," the only reasonable conclusion is that the legislature intended that all levy notices be sent in this manner regardless of the type of property involved.

■ Furthermore, such a reading supports the underlying purpose of the statutory scheme governing tax collection, that "[a]ll requirements of law leading up to tax sales are intended for the protection of the taxpayer against surprise or the sacrifice of his property." *Tanner v. Florence County Treasurer*, 336 S.C. 552, 563, 521 S.E.2d 153, 159 (1999) (quoting *Aldridge v. Rutledge*, 269 S.C. 475, 478, 238 S.E.2d 165, 166 (1977)); *see also Koenig v. S.C. Dep't of Pub. Safety*, 325 S.C. 400, 404, 480 S.E.2d 98, 99 (Ct.App.1996) ("[Statutory] language must be read in a sense which harmonizes with its subject matter and accords with its general purpose."); *Bennett v. Sullivan's Island Bd. of Adjustment*, 313 S.C. 455, 458, 438 S.E.2d 273, 274 (Ct.App.1993) ("Any ambiguity in a statute

should be resolved in favor of a just, equitable, and beneficial operation of the law.").

The defendants concede the levy notices herein were not sent "restricted delivery." Accordingly, the County clearly failed to comply with the notice provisions of the statute in this regard. *See Manji v. Blackwell,* 323 S.C. 91, 473 S.E.2d 837 (Ct.App.1996) (finding failure to send a redemption notice with delivery restricted to addressee only did not comply with statutory notice requirements).

## C. Property Description

■ Finally, Hawkins contends the tax sale was void because the advertisement of the LadyHawk insufficiently described the property. Again, we agree.

Once a constructive "levy by distress" has been accomplished, the statute requires the tax collector to "advertise[ ] the property for sale at public auction." *Id.* at § 12–51–40(d). This subsection reads, in part:

> [The advertisement] shall include the delinquent taxpayer's name and *the description of the property,* a reference to the county auditor's map-block-parcel number being sufficient for a description of realty.

*Id.* (emphasis added). Here, the advertisement placed by the County in the *Beaufort Gazette* listed the owner of the Lady-Hawk as "Hawkins Allen Lee" and the description as "PP550HAWALL," Hawkins' tax account number. Hawkins admits the ad heading identified a "PP" account as one involving the sale of a "boat." He argues, however, that such a cursory identification does not give effect to the statute's intended purpose, i.e., to encourage competitive bidding so that the defaulting taxpayer suffers no more of a deprivation of property than is necessary to meet his tax obligation. We agree.

■ The cardinal rule of statutory construction is to ascertain and effectuate legislative intent. *See Joint Legislative Comm. v. Huff,* 320 S.C. 241, 464 S.E.2d 324 (1995); *Glover by Cauthen v. Suitt Constr. Co.,* 318 S.C. 465, 458 S.E.2d 535 (1995). In attempting to determine such intent, when confronted with an undefined statutory term we must give the word its usual and customary meaning. *See Adoptive*

*Parents v. Biological Parents,* 315 S.C. 535, 446 S.E.2d 404 (1994); *see also Ray Bell Constr. Co., Inc. v. Sch. Dist. of Greenville County,* 331 S.C. 19, 26, 501 S.E.2d 725, 729 (1998) ("Where the terms of the statute are clear, the court must apply those terms according to their literal meaning."). A "description" is defined as "[a] delineation or account of a particular subject by the recital of its characteristic accidents and qualities." *Black's Law Dictionary* 445 (6th ed.1990).

■ In our view, the County's "description" of the Lady-Hawk as "PP550HAWALL" does not meet the definition usually prescribed, and therefore is contrary to the clear direction of the statute. *See Coastal Council v. Ethics Comm'n,* 306 S.C. at 44, 410 S.E.2d at 247 ("[I]n interpreting a statute, one does not look merely at a particular clause in which a word may be used, but rather looks at the word and its meaning in conjunction with the purpose of the whole statute, and in light of the object and policy of the law."). This reading also comports with the statute's overriding objective to protect the defaulting taxpayer from unfair surprise and sacrifice. *See, e.g., Folk v. Thomas,* 336 S.C. 466, 470, 520 S.E.2d 327, 330 (Ct.App.1999) (construing § 12–51–40(d) "to protect against forfeiture"); *Manji,* 323 S.C. at 94, 473 S.E.2d at 838 ("The sound view is that all requirements of the law leading up to tax sales which are intended for the protection of the taxpayer against surprise or the sacrifice of his property are to be regarded [as] mandatory, and are to be strictly enforced.") (quoting *Osborne v. Vallentine,* 196 S.C. 90, 94, 12 S.E.2d 856, 858 (1941)).

### D. Strict Statutory Compliance

■ The appellate courts of this state have repeatedly stressed that all conditions governing tax sales are mandatory and strictly enforced. *Tanner,* 336 S.C. at 563, 521 S.E.2d at 158–59; *Rives v. Bulsa,* 325 S.C. 287, 478 S.E.2d 878 (Ct.App. 1996). Tax sales, therefore, "must be conducted in strict compliance with statutory requirements." *In re Ryan Inv. Co., Inc.,* 335 S.C. 392, 395, 517 S.E.2d 692, 693 (1999); *see also Manji,* 323 S.C. at 93, 473 S.E.2d at 838 ("A statutorily-based tax sale requires strict adherence to the tax sale requirements."). This Court will set aside tax sales where the requisite statutory conditions of § 12–51–40 have not been

complied with by public officials. *Tanner*, 336 S.C. at 563, 521 S.E.2d at 159.

■ In the case at bar, Beaufort County authorities did not comply with three separate provisions of § 12–51–40 in that they failed to 1) give proper, sufficiently-worded notice to Hawkins of the attempted levy; 2) restrict delivery of the August 1995 levy notices; and 3) properly describe the Lady-Hawk in the tax sale advertisement. Each failure to comply with the requisite statutory mandate, in and of itself, is sufficient to void a tax sale. *See, e.g., id.* ("Failure to give the required notice is a fundamental defect in the tax proceedings which renders the proceedings absolutely void.") (citing *Donohue v. Ward,* 298 S.C. 75, 378 S.E.2d 261 (Ct.App.1989)); *Rives,* 325 S.C. at 293, 478 S.E.2d at 881 ("Due process of law requires some sort of notice to a landowner before he is deprived of his property."); *Ryan,* 335 S.C. at 395, 517 S.E.2d at 693 ("The failure to mail a redemption notice by restricted delivery mail is ground to invalidate a tax sale."); *Manji,* 323 S.C. at 94, 473 S.E.2d at 838 (voiding tax deed where § 12–51–120 clearly required the tax collector to send a redemption notice "certified mail, return receipt requested—deliver to addressee only" and official failed to comply, even where the notice was sent certified mail and the defaulting taxpayer's wife signed the receipt); *Rose v. Bradwell,* 295 S.C. 147, 367 S.E.2d 443 (Ct.App.1988) (setting aside tax sale where required advertisement identified the property to be sold only by reference to an erroneous tax map number because it failed to strictly comply with the statutory requirement that the advertisement specify the property to be sold).

■ Despite this clear guidance, the defendants repeatedly assert that "Hawkins' dilemma and the loss of the LadyHawk was plainly the result of his inaction" because he was aware the taxes were past due and failed to act to prevent the sale. To the contrary, our appellate courts have expressly held proof of actual notice to the defaulting taxpayer does not excuse non-compliance with statutory notice requirements. *See Ryan,* 335 S.C. at 395, 517 S.E.2d at 693 ("Even actual notice is insufficient to uphold a tax sale absent strict compliance with statutory requirements."); *Manji,* 323 S.C. at 93, 473 S.E.2d at 838 (citing *Aldridge v. Rutledge,* 269 S.C. 475,

238 S.E.2d 165 (1977) (failure to provide the required statutory notice to the true owner of the property is not excused, regardless of actual notice)); *South Carolina Fed. Sav. Bank v. Atlantic Land Title Co.*, 314 S.C. 292, 295, 442 S.E.2d 630, 632 (Ct.App.1994) ("[S]tatutory notice requirements may not be circumvented simply by establishing actual notice of a tax sale."); *Donohue v. Ward*, 298 S.C. 75, 83–84, 378 S.E.2d 261, 266 (Ct.App.1989) ("The giving of a mandatory notice to a tax debtor is not waived by the informal knowledge on [his] part that taxes have not been paid . . . even if the debtor has actual knowledge of it and attempts to waive a failure to give notice.").

■ The defendants further contend that the rule commanding strict construction of statutory notice provisions applies only to matters involving real property, not personalty. This argument lacks merit. No authority is cited in support of this proposition and we are aware of no case distinguishing between real and personal property; indeed, both types of property are governed by the same provisions of our Code. We therefore see no reason not to require strict compliance in this instance. Because the County failed to adhere to the mandatory notice provisions contained in § 12–51–40, we conclude the tax sale of the LadyHawk was void.

## II. Judicial Estoppel

■ In his second issue on appeal, Hawkins asserts the master erred in applying the doctrine of judicial estoppel as a further bar to recovery of the LadyHawk. We agree.

■ Judicial estoppel operates to prohibit a party to a lawsuit "from adopting a position in conflict with one earlier taken in the same or related litigation." *Hayne Fed. Credit Union v. Bailey*, 327 S.C. 242, 251, 489 S.E.2d 472, 477 (1997). Its purpose is not to protect the parties from allegedly dishonest conduct by adversaries; rather, judicial estoppel acts to ensure the integrity of the judicial process. *Id.* (citing 31 C.J.S. *Estoppel & Waiver* § 139 (1996)). The doctrine, therefore, sustains the truth-seeking function of the courts. *Id.* at 252, 489 S.E.2d at 477.

In this instance, the master applied judicial estoppel to preclude Hawkins from claiming ownership of the LadyHawk

because he had previously argued in federal district court that Gryphon, Inc. owned the vessel. We believe the defendants relinquished any right to assert judicial estoppel against Hawkins when counsel for all parties agreed, on the record before the master, that Hawkins in fact owned the LadyHawk at the time of the tax sale.[7]

---

7. At trial, counsel for Hawkins rebutted the defendants' judicial estoppel argument with the following:

> [I]f we're going to have this argument made that Mr. Hawkins disclaimed ownership, the necessary consequence[] is Gryphon is still the owner. All we ask is that ... Mr. Bruno's side not be able to have it both ways either. I mean, one person was the owner of the boat before the tax sale. We're happy to agree it was Mr. Hawkins. But if we're going to be told that it wasn't Mr. Hawkins, then we are entitled to make the argument that it was Gryphon. One of the two is all we ask.
>
> . . . .
>
> If we can all agree that Allen Lee Hawkins is the real party in interest, that he was the owner before the tax sale and that he was the proper person to be sent notices. And that if the tax sale was invalid, he's the person entitled to attempt to recover possession of the vessel.

Counsel for Beaufort County assented and Bruno's counsel then stated:

> COUNSEL: Your Honor, I have no problem that Allen Lee Hawkins was the owner at the time that the property was taxed and at the time of the tax sale but I have a problem because a Federal Court has already determined that after that he was not—
>
> COURT: I'm not concerned about that. As long as you say you have no problem about it then, that's what I'm concerned about. Okay.
>
> COUNSEL: Right. I have no problem with that.
>
> COURT: Let's go forward then.

Hawkins' counsel then replied:

> Thank you. And I think we probably ought to go ahead and put [into evidence] this certificate of documentation showing Mr. Hawkins as the owner as of 1992. So, could we mark that, please?
>
> COURT: Without objection I assume.
>
> COUNTY COUNSEL: No objection.
>
> BRUNO COUNSEL: No objection, your Honor.

This finding is supported by the defendants' appellate brief, in which they state:

> [I]t is undisputed that the LadyHawk was subject to the assessment of 1994 personal property taxes. It is also undisputed that since, at least, March 10, 1992, *when Gryphon sold the LadyHawk back to Mr. Hawkins,* both Gryphon and Mr. Hawkins shared the Palmetto Bay [a]ddress[.]
>
> . . . .
>
> [Bruno Yacht Sales] always took the position that Mr. Hawkins owned the LadyHawk in 1994 when the County assessed the personal property taxes at issue, as well as[] in 1995 when the County sent the notices to him and sold the vessel at the October 1995[] delinquent

As noted above, judicial estoppel focuses on the relationship between the litigants and the judicial system. Courts invoke the doctrine to deter parties from playing "fast-and-loose" with the facts of a case such that the judicial system is adversely impacted. *See* 31 C.J.S. at 593–594. Because judicial estoppel is an equitable concept, depending upon the facts and circumstances of each individual case, application of the doctrine is discretionary. *Id.* at 595. This Court will not condone the application of judicial estoppel where to do so would work an injustice against the party being estopped while simultaneously subverting the judicial process.

Here, the parties and master stipulated that Hawkins owned the LadyHawk at the time of the tax sale at issue. The defendants, however, now contend Hawkins is estopped from claiming ownership of the vessel. This assertion in no way serves the truth-seeking function of the judiciary; instead, it corrupts the process it is meant to uphold. We agree with Hawkins that equity demands that all parties to litigation be bound by the same set of facts. To hold otherwise would perpetrate an injustice to Hawkins that judicial estoppel is not intended to effect. This is particularly true in light of the fact that the defendants' admitted agreement induced Hawkins to abandon his argument claiming Gryphon, Inc. as the true owner of the LadyHawk.[8] The master, therefore, erred in applying the doctrine of judicial estoppel.

Accordingly, we reverse the master's judgment and remand the case for reconsideration of Hawkins' motion to amend and, in the event the LadyHawk cannot be recovered, an appropriate determination of damages.

**REVERSED and REMANDED.**

CURETON and GOOLSBY, JJ., concur.

---

tax sale.... Obviously, there can be only one owner and [Bruno Yacht Sales] asserted it was Mr. Hawkins.

8. We note that if Hawkins' position from the Florida federal court had been accepted by the master, i.e., that Gryphon, Inc. failed to transfer the LadyHawk back to Hawkins in 1992, then the tax sale was void ab initio because Beaufort County never sent Gryphon, Inc. *any* notice of the sale. It is therefore not surprising that the defendants readily conceded that Hawkins was the vessel's true owner at the time of the sale.