[Civ. No. 8641. Second Appellate District, Division Two.—October 18, 1934.]

JAMES L. McDANELS, Appellant, v. GENERAL INSURANCE COMPANY OF AMERICA (a Corporation) et al., Respondents.

A. W. Brunton and Koenig & Brunton for Appellant.

Joe Crider, Jr., for Respondents.

WILLIS, J., *pro tem.*—Appellant was injured in an automobile accident and a judgment for personal injuries therein sustained was recovered by him against one Haag, who at the time of the accident was the assured in a public liability

insurance policy issued by respondent companies. Many continuances of the trial of the personal injury action were obtained by counsel appearing of record for Haag, such counsel being provided for him to defend said action by respondent companies. These continuances were made to appear necessary in order to secure the presence of Haag, who was charged personally with the commission of the negligent acts for which damage was sought, as a witness at the trial, but he did not appear and the trial proceeded in his absence before a jury, which rendered a verdict in the sum of $10,000. Judgment was entered thereon which has become final and on which a writ of execution has been issued and returned *nulla bona*. Prior to trial the assured was repeatedly requested by counsel for respondent companies to aid them in obtaining and furnishing information, securing evidence and attendance of witnesses and in preparing a defense in the action against him, but he failed to do so; and although he promised to be present at the trial he failed to appear and could not be found upon diligent search and inquiry. The policy issued to Haag contained the usual stipulations requiring the assured to report accidents, claims and suits, which the insurer agreed to defend, and provided that "the assured, when requested by the company, shall aid in effecting settlements, securing evidence, the attendance of witnesses and in prosecuting appeals".

For his failure in these respects it is obvious that Haag, the assured, could not himself have held the company to its liability under the policy. (*Hynding* v. *Home Acc. Ins. Co.,* 214 Cal. 743 [7 Pac. (2d) 999, 85 A. L. R. 13].) In the instant case, respondents pleaded such noncooperation by the assured as a defense, and after trial the lower court by its decision sustained the same and ordered judgment for respondents. The question of validity of the plea of such failure to cooperate as a defense under contracts of this kind has been met and settled by the Supreme Court in the case of *Hynding* v. *Home Acc. Ins. Co., supra,* wherein the lower court was reversed for error in striking such a plea from the answer and in which the law is declared in these words: "We see no escape from the conclusion that the violation of the cooperation clause by the assured was a valid defense against the injured party's action." The court further said: "We are also of the opinion, and we think

most of the authorities are agreed, that the provision must be one reasonably necessary for the protection of the insurance company, and one which can readily be complied with by the assured; and that the violation of the condition by the assured cannot be a valid defense against the injured party unless in the particular case it appears that the insurance company was substantially prejudiced thereby. [Citing authorities.] Here these elements are all present. To require the cooperation of the assured to the extent of attendance at the trial, when he is a material witness, is a perfectly reasonable condition. Failure to testify may be as damaging as failure to give notice of the accident or the suit. . . . Under these circumstances the company was clearly prejudiced by his failure to appear. In any event the question of such prejudice should have been considered below.''

It is with respect to this question of prejudice that appellant herein presses the point that the court below erred in refusing admission of testimony of the court reporter offered by appellant to prove that at the trial of the personal injury action respondents' attorneys appearing for defendant Haag were permitted, by consent of appellant's attorneys, to read into evidence the statement in writing purporting to have been made by Haag immediately after the accident and to contain his version of the collision and accident. This conduct of respondents' attorneys appellant claims avoided and overcame the prejudice which would obviously result from his failure to appear and testify.

At the trial the court sustained respondents' objection to the offer by appellant of such proof, but at a subsequent period in the trial, upon request of appellant's attorneys to produce, respondents' attorneys did produce and deliver to appellant's counsel the statement in writing of Haag which, appellant had previously but unsuccessfully sought to bring before the court as having been read at the personal injury trial. Thereupon counsel for appellant offered in evidence such statement, which he characterized as the statement made by Haag and which already appeared to be the one read to the jury at the previous trial, and the statement was without objection received in evidence and marked ''Plaintiff's Exhibit No 1''. Any error that could be predicated on the court's refusal to admit the court reporter's testimony to the effect that such statement was read into evidence at the per-

458

sonal injury trial was cured by the subsequent admission of the statement under the circumstances. ▮ This at once brought before the court the fact that such statement had been used at the other trial, and it must be presumed that the lower court considered it in arriving at its decision and that it impliedly found that such proof could not and did not overcome the status of substantial prejudice resulting from Haag's noncooperation and failure to attend and testify at the trial. The statement, which was very brief and not under oath, tended to show that appellant was at fault in the accident and that a meritorious defense might be established by Haag's testimony. That such evidence could not take the place of his sworn testimony substantiating such statement with details is obvious. That it could not overcome the substantial prejudice created by his absence and failure to give his testimony in person is patent, as is somewhat demonstrated by the jury's verdict and the amount thereof.

▮ There was no error, as claimed by appellant, in the trial court's refusal to admit evidence of admissions of the assured made shortly after the accident. Such evidence was entirely irrelevant to any issue in this case and as to respondents it was clearly hearsay.

Appellant's principal contention herein is that respondents are estopped to disclaim liability to appellant on the policy by their election to proceed with the trial of the personal injury case with knowledge that the assured Haag would not be present and give his testimony,—thereby waiving their defense of nonliability for breach of the cooperation clause,— instead of withdrawing their attorneys and refusing to go on with the trial—thus electing to stand on their defense of noncooperation of the assured. In support of this contention he cites a number of cases from courts of other states in the Union which appear to sustain it, the most favorable being the following: *Daly* v. *Employers' etc. Corp. Ltd.*, 269 Mass. 1 [168 N. E. 111, 72 A. L. R. 1436]; *Brandon* v. *St. Paul etc. Co.*, 132 Kan. 68 [294 Pac. 881, 83 A. L. R. 673]; *Miller* v. *Union Indemnity Co.*, 209 App. Div. 455 [204 N. Y. Supp. 730]; *Reilly* v. *Linden*, 151 Minn. 1 [186 N. W. 121]; *Indemnity Co., etc.,* v. *Pitts,* (Tex. Com. App.) 58 S. W. (2d) 53; *Glade* v. *General Mutual etc. Assn.*, 216 Iowa, 622 [246 N. W. 794]. The proposition contended for by appellant is succinctly expressed by the language of the Supreme

Court, Appellate Division, of New York in *Miller* v. *Union Indemnity Co., supra,* quoted by appellant and reading thus: "When confronted with this situation, 'failure of insured to co-operate,' assuming that the alleged defense is valid, the defendant (insurer) was put to an election. It could stand on its defense and refuse to go on, or it could abandon such defense and conduct the insured's side of the action. It could not do both. The choice of the latter course was inconsistent with the maintenance of a claim of no liability." All other decisions above noted are in substantial agreement on the proposition that under circumstances similar to those in this case the act of the insurer in proceeding with the trial against the assured, with notice or knowledge of his violation of the cooperation clause in a policy with the same provisions as those involved herein, constituted a waiver by the insurer of its prospective defense of breach of the co-operation clause by the assured, and the insurer was thereby estopped to assert such defense in a subsequent action by the injured party on the policy. No decisions of our own courts have been cited or found which have dealt with or determined the proposition as thus stated. We are therefore treading new territory, and before proceeding it is wise to consult the chart and use the compass provided by the established law of waiver, election and estoppel.

The estoppel claimed by appellant and recognized by the above-mentioned cases is that form of estoppel *in pais* called by text-writers and known to jurists as *quasi* estoppel. This class of estoppel is sometimes expressed in the language of the rule or maxim that one cannot blow both hot and cold. It is based upon the broad equitable principle which courts recognize, that a person, with full knowledge of the facts, shall not be permitted to act in a manner inconsistent with his former position or conduct to the injury of another. To constitute this sort of estoppel the act of the party against whom the estoppel is sought must have gained some advantage for himself or produced some disadvantage to another; or the person invoking the estoppel must have been induced to change his position, or by reason thereof the rights of other parties must have intervened. (10 Cal. Jur. 645.) The terms "waiver" and "estoppel *in pais*" are sometimes employed indiscriminately; but strictly speaking, the former is used to designate the act or the consequence of the act of

one person only, while the latter is applicable where one's conduct has induced another to take such a position that he will be injured if the first be permitted to repudiate his acts.

To constitute a waiver there must be an existing right, a knowledge of its existence, and an actual intention to relinquish it, or such conduct as warrants an inference of the relinquishment. It is a voluntary act and implies an abandonment of a right or privilege—an election to dispense with something of value or to forego some advantage which one might, at his option, have demanded or insisted upon. In no case will a waiver be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled, to his prejudice, into the honest belief that such waiver was intended or consented to. (25 Cal. Jur. 926–928.)

In the light of these propositions of the law of waiver and estoppel based thereon, we think the decisions cited by appellant are not controlling. The undisputed facts herein negative any intention on the part of the insurer to abandon its prospective defense of noncooperation or to waive its right to assert such defense whenever its liability on the policy was charged by one having the right so to do. On the contrary, over one month prior to proceeding with the trial of the personal injury case respondents wrote to the assured urging him to be present at the trial and stating that his failure to appear would constitute a breach of his policy, declaring that he had already breached it by failing to appear at a previous date and concluding with these words: "You are advised that the insurance company does not waive any breach which you have already committed." Under a somewhat similar state of facts it was held in the case of *Coolidge* v. *Standard Acc. Ins. Co.*, 114 Cal. App. 716 [300 Pac. 885], that waiver had not occurred. No advantage over appellant was gained for the insurer by proceeding with the trial, nor did appellant suffer any disadvantage therefrom. No change of position by appellant was caused thereby, nor did the rights of any other person intervene because thereof. Despite the fact that respondents continued to participate in the trial in the absence of the assured, who was a material witness, appellant secured a judgment for an amount

double the liability of respondents as stated in the insurance policy. Surely neither disadvantage to appellant nor advantage to respondents is reflected by such result.

Nor can it truly be said that by proceeding with the trial of the personal injury case with knowledge of the breach by the insured, and by pleading such breach as a defense in the subsequent action on the policy, the insurer was blowing both hot and cold. Such acts were not of that inconsistency which required an election by respondents.

The basis of the doctrine of election is founded upon the theory that a party should not be allowed to occupy inconsistent positions, and upon the proposition that where there is by law or by contract a choice between two remedies which proceed upon opposite and irreconcilable claims of right, the one taken must exclude and bar prosecution of the other. (10 Cal. Jur. 3.) The doctrine of election, as applied to a choice of remedies, either offensive or defensive, which precludes a party from claiming repugnant rights, is but an extension of the general principles of equitable estoppel, and proceeds upon a like theory that the inconsistent attitude of the party will put his adversary to some disadvantage. (*Hines* v. *Ward*, 121 Cal. 115 [53 Pac. 427].) The facts do not bring this case within such doctrine. Here appellant lost no advantage which he had a right to claim. He was not entitled to any right to try his action for damages without opposition nor as a default case. The contract of insurance obligated the respondents to defend the suit in the name and on behalf of the assured. This duty respondents undertook to discharge when suit was brought against the assured, and continued to perform without definite knowledge of breach or intended breach until about one month before the actual trial, when they gave the notice of breach and nonwaiver to the assured as above recited. Continuing performance, subject to this reservation, and making diligent but unsuccessful search for the insured so as to procure his attendance as a witness, after many continuances the day of trial arrived and the cause was ordered by the court to proceed. At this juncture it cannot be said that respondents were free to withdraw their attorneys from the case. The defendant client was absent. A wilful neglect by his attorneys or violation of the duty of the attorneys to

him to continue to represent him until excused by consent of the client or by order of court would constitute contempt of court. (Sec. 1209, Code Civ. Proc.) To withdraw as attorneys for the assured required leave of court after notice to the assured. (Sec. 284, Code Civ. Proc.) Such could not be expected when the assured had not been found after long search, but whose appearance at the trial his counsel had a right to hope for if not expect. It is clear that respondents were not entirely free to abandon the defense of the case under such circumstances. We are therefore constrained to hold that their continuance up to and through the trial, in view of their express notice of nonwaiver, did not constitute waiver of their right to plead the defense of breach of the cooperation clause in the subsequent action on the policy. No parting of the ways, which is characteristic of election, confronted them in the progress of the case which required of them an election, but rather the coming together of two ways leading to the same objective, namely, protection against liability. Defending at the trial to the end of defeating the injured party's claim, if not supported by sufficient proof, or, as an alternative, to the end of minimizing the judgment for damages—which under the law would become absolute as to amount thereof against the insurer— and the pleading of the defense of breach of the cooperation clause in the suit on the policy to collect that judgment, were but cumulative or consecutive remedies employed by respondents and clearly not inconsistent. Such conduct was not based on opposite and irreconcilable claims of right, typical of the doctrine of election, but upon one and the same claim of right to defend against liability on the policy.

From the foregoing it follows that respondents were not estopped to plead as a defense herein the breach by the insured of the cooperation clause of the policy, and to enjoy the benefit thereof against the claim of appellant in the same manner and to the same extent had the claim been asserted by the assured. As decided in the Hynding case, the assured obviously could not hold respondents liable under the facts of such a case as this. In the absence of waiver or estoppel neither may the appellan'.

The judgment is affirmed.

Stephens, P. J., and Desmond, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 17, 1934.