John H. Pennock, J.
This is a motion under article 78 of the Civil Practice Law and Rules praying for an order of this court amending* a decision of James E. Allen, Jr., Commissioner of Education of the State of New York, and remitting the proceedings to Commissioner Allen with the direction that he reverse the decision of the Board of Education of the City of New York made August 22, 1962 insofar as that decision denied a dismissal of the charges against the petitioners, and that this court direct that Commissioner Allen reinstate petitioners with full back pay from date of suspension, on the basis that the Commissioner’s decision was arbitrary and capricious, contrary to law and in violation of the constitutional rights of the petitioners under the Constitution of the State of New York and the Constitution of the United States.
The individual petitioners in these cases are two school teachers in the New York City school system who when questioned by the respondent, Superintendent of Schools of the City of New York (hereinafter referred to as' the superintendent), as to their past and present affiliations with the Communist party each admitted past, but denied present membership in *36 the Communist party. Each of the petitioners had previously submitted applications for teaching positions to the New York City Board of Education (hereinafter referred to as the board), and each in doing so, falsely answered “so” to the following question: “ Are you now, or have you ever been affiliated with any organization or group endorsing the Communist, Fascist or Nazi movements 1 ”
The petitioners were subjected to charges, after which a hearing was had and decision made by the board, all of which was in accord with accepted administrative and judicial practice. The trial examiner made findings of fact as to the petitioners that substantiate the decisioin of the board and he recommended that both petitioners be removed as teachers forthwith. The board accepted the findings, but in its decision directed that both petitioners be reinstated with loss of pay for the 32 months during which they were under suspension. The petitioners appealed to the Commissioner of Education of the State of New York (hereinafter referred to as the Commissioner) and he affirmed the decision of the board. In his decision the Commissioner stated in part as follows: “I cannot find that the action of respondent, board, was so unreasonable as to warrant any interference. The Appeal is Dismissed. ’ ’ (Decision of James E. Allen, Commissioner, Aug. 13, 1963.)
The basic question before the court is as to the decision of the Commissioner that the false answers of the petitioner teachers were grounds for suspension for a period of 32 months without pay. The petitioners claim his decision was arbitrary.
A review of the record fails to establish by proof or competent evidence that the decision was arbitrary or capricious. The Commissioner made this decision under the powers conferred upon him by the Legislature under section 310 of the Education Law. The Commissioner in hearing these cases on appeal sits as an expert in his field. He is presumed to have a vast knowledge of the educational system of this State, in fact he is charged with the duty to supervise the education of all of the youth of this State. He is the supreme authority on decisions pertaining to educational matters. The courts cannot interfere unless his decision is arbitrary, in other words at random, and without reason. The rule was well stated in Matter of Cochran v. Levy (175 Misc. 666, 668, affd. 263 App. Div. 921) as follows: “in the absence of a determination depending upon such arbitrary and naked power that no reasonable man could reach the result upon appeal, the determination is final and the controversy put at rest. Such finality, in plain language, is the legislative policy of the State
*37 The Commissioner has the duty to supervise the education of the youth — that is the primary purpose of all the laws of this State in respect to education. The educational system is not founded primarily to afford employment, construct buildings, to set up retirements for teachers, rather its primary purpose is to educate the youth in the best possible manner. All of these other facets are but a part of the over-all purpose although they are a necessary part. Reasonable men often differ, however, a mere difference of opinion does not give each opinion the label of “ arbitrary”. Further the Court of Appeals of this State has set forth the law as to court review of the Commissioner’s decisions as follows: “ the Commissioner of Education has been made the chief administrative officer of the educational system of the State and, as such, has been invested with broad powers of review. He may review any ‘ official act or decision of any officer, school authorities, or meetings concerning any * * * matter under this chapter, or any * * # act pertaining to common schools. ’ (Education Law, § 310, subd. 7.) The courts, in turn, may review the Commissioner’s determinations made on appeals taken to him pursuant to section 310. However, the Commissioner’s determinations may not be stricken down unless they be ‘ purely arbitrary. ’ The Commissioner on his review has not been so restricted. That is, unlike the courts, the Commissioner is empowered to substitute his judgment for that of the officer whose action he is reviewing. This is the plain import of section 310. All the courts may do is ascertain whether the Commissioner’s decision was purely arbitrary.” (Matter of Board of Educ. of City of N. Y. v. Allen, 6 N Y 2d 127, 141.)
There was no violation of the constitutional rights of the petitioners under the Constitution of the State of New York and the Constitution of the United States. A State has a vital concern in the integrity of its schools, and the school authorities have a right and duty to screen officials, teachers and employees as to their fitness to maintain integrity of the schools. (Beilan v. Board of Educ. 357 U. S. 399.) The Constitution has no provision which permits a citizen to lie and deceive. The question on the application form was proper to screen applicants. “ A teacher works in a sensitive area in a schoolroom. There he shapes the attitude of young minds toward the society in which they live. In this, the state has a vital concern. It must preserve the integrity of the schools. That the school authorities have the right and duty to screen the officials, teachers, and employees as to their fitness to maintain the integrity of *38 the schools as a part of ordered society, cannot be doubted”. (Adler v. Board of Educ., 342 U. S. 485, 493.)
The petitioners have raised other objections. Based upon the record before me they are not tenable. The suspension of the petitioners was a reasonable decision based on the record. They do not subscribe to the 32 months suspension without pay. Even if the punishment was too severe, and this court does not so find, there is a serious question as to payment of the lost wages to the petitioners. (See Education Law, § 2573, subd. 7.) The false oath smacks at the very foundation of our everyday moral code of human relations and to justice itself for without truth we could have no justice. The posture of the petitioners in this respect only adds strength to the good reasonable judgment role that the Commissioner has followed in making his decision. In fact some reasonable men might differ with the Commissioner’s decision to permit the petitioners to resume their teaching duties, but again it is his decision based upon statute and within his powers tempered by what in his opinion is the best result from the educational standpoint.
The fact that the two petitioners have been proceeded against does not give them any immunity even if there are others who appear similarly situated. They cannot escape the punishment by pointing to others. In fact it may be the petitioners who hold the key to the punishment of others but the Commissioner in his discretion has not requested that these petitioners inform on any others. This question was settled in the Allen case (Matter of Board of Educ. of City of N. Y. v. Allen, supra.) Further the record indicates that the hearing examiner expunged and refused to consider any matters other than that which pertained to the instant charge. This was explicit in his report. “ In all of these cases I have consistently excluded as immaterial and irrelevant all testimony and argumentation concerning the motives of the Superintendent of Schools in pressing these specifications against these respondents, (herein Douglas and Levine). # * * I am excluding as irrelevant and immaterial all attempts to allege that these charges of perjury are merely efforts to punish the respondents for failing to identify fellow members of the Communist Party”. (Report of Louis Goldstein, Trial Examiner, p. 14.)
The petitioners contend that the board improperly discriminated against them by unreasonably creating two classes of persons. Those who made false statements and informed, and those who made false statements and refused to inform. This supposition is purely speculative. They also contend that the *39 records of other teachers in the school system of New York City be reviewed and compared with the records of the petitioners. This would be a cumbersome, unwieldly task and would be insuperably difficult. It would cause a state of utter confusion. The case of Yick Wo v. Hopkins (118 U. S. 356) cited by petitioners is not in point. In the case at bar the teachers hold their positions in the nature of a privilege under statute and not as a matter of public right. (Education Law, § 2573.)
The Statute of Limitations is no defense to these petitioners. (Education Law, § 2573, subd. 8-a.) A prospective teacher cannot obtain employment on false statements to qualify above the standard set. In other words these petitioners may not have qualified in the first instance. No statute can be employed in this manner to qualify an applicant. They are in no better position than one who falsely made claim to educational requirements.
After full consideration of the petitioners’ contentions, in my judgment the determination of the Commissioner is not illegal, arbitrary or capricious. It follows that a case for judicial interference has not been made out. The Commissioner’s determination is confirmed and the petition is dismissed on the merits, without costs.