0961

Jay Dee MOSS, Jr., Respondent v. PORTER BROTHERS, INC., Appellant.
(357 S. E. (2d) 25)

Court of Appeals

*David R. Gravely* of *Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, P.A.,* Myrtle Beach, *for appellant.*

*O. Allen Alexander* of *McCutcheon, McCutcheon & Baxter, P.A.,* Conway, *for respondent.*

Submitted April 22, 1987.

Decided May 26, 1987.

GOOLSBY, Judge:

Jay Dee Moss, Jr., brought suit against Porter Brothers, Inc., alleging breach of a sales commission agreement. The trial court granted Moss summary judgment on the issue of liability but denied him summary judgment on the issue of damages. Porter Brothers appeals, contending that the grant of partial summary judgment was inappropriate because there exists a genuine issue of material fact. We affirm.

At the outset, we acknowledged Moss's contention that Porter Brothers' appeal should be dismissed for failure to comply with Supreme Court Rule 8, Section 2, in that Porter Brothers failed to set out the questions involved "in the briefest and most general terms" on the first page of its brief. Although we have authority to dismiss its appeal [*Diamond v. Powell,* 271 S. C. 183, 246 S. E. (2d) 233 (1978); *Brown v. Mims,* 250 S. C. 546, 159 S. E. (2d) 247 (1968) ], we elect not to do so in this instance. Porter Brothers' brief is short, all its exceptions are grouped under one question, and Moss has suffered no real harm by Porter Brothers' violation of the rule. His brief fairly met Porter Brothers' contentions.

Porter Brothers employed Moss as a salesman from September 1, 1983 until he resigned on November 30, 1983. His employment contract with Porter Brothers, reflected in a document entitled "Salesmen's Additional Compensation Plan for the Year Ending August 31, 1984," authorizes Moss to be paid a monthly salary and commissions based on sales within his assigned territory.

The compensation plan defines the term "sales" as the "invoice amount for whole goods and parts and accessories,

but not including tax, advertising, service fees or any other miscellaneous charges." It also requires that the determination of additional compensation in the form of sales commissions payable to Moss be made "annually after the close of the fiscal year."

Moss commenced this action two years after he resigned his position with Porter Brothers. By his complaint, Moss seeks the recovery of an amount representing sales commissions allegedly earned by him during the three month period that he worked for Porter Brothers.

Porter Brothers' answer denies that it owes Moss for any sales commissions and alleges that Moss was entitled to receive sales commissions only for goods actually shipped and invoiced before the date of his resignation. In addition, Porter Brothers alleges that its course of conduct with reference to paying sales commissions has been to require that goods actually be shipped and invoiced as of the date of an employee's termination.

Moss subsequently filed a motion for summary judgment along with a supporting affidavit. Porter Brothers filed no opposing affidavit prior to the date of the hearing on Moss's motion; however, the trial court allowed Porter Brothers time within which to file an affidavit concerning whether there existed a material issue of fact regarding the total amount of sales occurring within Moss's territory between September 1, 1983 and November 30, 1983.

Porter Brothers thereafter filed two affidavits. One affidavit, that of C. M. Bolt, the president of Porter Brothers, offers information beyond that which the trial court authorized Porter Brothers to supply by subsequent affidavit. Bolt's affidavit recites that "[a]ll salesmen at Porter Brothers, including . . . Moss, are only paid commissions on goods which have actually been shipped and invoiced [and that] Moss understood and it was explained to him that he would only be entitled to commissions on goods invoiced and shipped." He additionally affirms that "every salesman who has ever resigned or been terminated by Porter Brothers has been paid commissions only for goods invoiced and shipped as of the date of his termination or resignation."

Moss immediately objected to Bolt's affidavit on the ground that it was not timely filed under Rule 56(c) of the

South Carolina Rules of Civil Procedure. Porter Brothers then asked the trial court to consider the affidavit pursuant to Rule 56(f).

The trial court granted Moss summary judgment on the issue of liability and denied Moss summary judgment on the issue of damages. It held Moss entitled to a sales commission on each sale that occurred within his territory between September 1, 1983 and November 30, 1983, "regardless of whether the sale was completed prior to his termination of employment." The trial court viewed the term "sales" to include "those for which orders were placed . . ., regardless of whether such orders were invoiced or shipped" during Moss's period of employment. The trial court expressly rejected the notion that anything in the affidavits submitted by Porter Brothers "can be used to change the clear terms of the [employment] contract."

The issue of material fact that Porter Brothers claims exists in this case is whether the course of conduct that Bolt's affidavit states Porter Brothers followed in paying its salesmen establishes that sales commissions under the compensation plan are payable only on goods actually shipped and invoiced during the time Porter Brothers employed Moss.

■ Summary judgment should be granted when it is clear that there is no genuine issue of material fact involved and the moving party is entitled to judgment as a matter of law. *Spencer v. Miller*, 259 S. C. 453, 192 S. E. (2d) 863 (1972); *Gilmore v. Ivey*, 290 S. C. 53, 348 S. E. (2d) 180 (Ct. App. 1986). Where a motion for summary judgment presents a question concerning the construction of a written contract, the question is one of law if the language employed by the contract is plain and unambiguous. *First-Citizens Bank and Trust Co. v. Conway National Bank*, 282 S. C. 303, 317 S. E. (2d) 776 (Ct. App. 1984). Summary judgment is proper in such a case where the intention of the parties regarding the legal effect of the contract may be gathered from its four corners. *Id.*

■ As we mentioned, the employment contract itself defines the term "sales." According to the employment contract, the term "sales" means, basically, the "invoice amount." Nothing about this definition limits Porter

Brothers' liability for payment to Moss of a sales commission otherwise earned by him to only those goods shipped and invoiced during the period of his employment with Porter Brothers. Indeed, no other provision of the employment contract so restricts Moss's right to receive sales commissions. Absent a provision to the contrary, Moss is entitled to receive a sales commission for all goods, parts, or accessories sold by him while employed by Porter Brothers, irrespective of when they are shipped and invoiced. *See Grattan v. Societa Per Azzioni Cotonificio Cantoni*, 2 Misc. (2d) 861, 870-871, 151 N.Y.S. (2d) 875, 884 (1956) ("It is established law that an agent who renders services on a commission basis is entitled to commissions on orders procured prior to termination of the employment and filled subsequently, in the absence of an agreement to the contrary.")

Like the contract in *Autrey v. Bell*, 114 S. C. 370, 103 S. E. 749, (1920), which also involved an action for commissions allegedly due under an employment contract, the terms of the employment contract control. They do so because they are unambiguous and thus cannot be varied or explained by evidence of custom or usage. *Id.*

But Porter Brothers contends that the trial court accepted Bolt's untimely-filed affidavits and, because it did so, a genuine issue of material fact exists. Porter Brothers misreads the trial court's order. The trial court specifically stated, as we noted, that "[n]othing ... in [Porter Brothers'] affidavits can be used to change the clear terms of the contract."

In any case, irrespective of whether the trial court accepted Bolt's untimely-filed affidavit or not, its recital of evidence of custom and usage regarding the payment of sales commissions could not properly be used here to vary or explain the terms of what we regard as an unambiguous employment contract. *See* S.C.R. Civ. P. 56(e) ("Supporting and opposing affidavits ... shall set forth such facts as would be admissible in evidence,....."); 73 Am. Jur. (2d) *Summary Judgment* § 32 at 762 (1974) ("Generally, in ruling on a motion for summary judgment, only evidence ... that would be admissible on the trial and having probative force may be considered...."); 21A Am. Jur. (2d) *Customs and*

*Usages* § 25 at 745 (1981) ("[P]arol or extrinsic evidence of a usage or custom is not admissible where the intent and meaning of the parties as expressed in a contract are clear and unambiguous, especially where the purpose of the evidence is to ... vary ... the plain, unambiguous terms ... expressed in a contract. ...").

There being no triable issue of fact as to liability, the trial court's grant of partial summary judgment, therefore, was proper.

Affirmed.

SANDERS, C. J., and BELL, J., concur.