566 S.E.2d 548

**Ferrell COTHRAN, Personal Representative of the Estate of Douglas H. McFaddin, Respondent,**

v.

**Alvin BROWN, Appellant.**

No. 3495.

Court of Appeals of South Carolina.

Heard Jan. 9, 2002.

Decided May 13, 2002.

Rehearing Denied July 29, 2002.

William B. Woods, Donna Seegars Givens and Darra James Vallini, all of Woods & Givens, of Lexington; and Samuel R. Clawson and Timothy A. Domin, both of Clawson & Staubes, of Charleston, for appellant.

Gedney W. Howe, III, of Charleston; John C. Land, of Land, Parker & Reeves, of Manning; and Daniel H. Shine, of Dillon, for respondent.

HEARN, Chief Judge:

Ferrell Cothran brought this action asserting wrongful death and survival claims against Alvin Brown as personal representative of the estate of Douglas H. McFaddin. The trial court granted Cothran partial summary judgment on the issue of liability. A panel of this court reversed. We granted

Cothran's Petition for Rehearing *En Banc* to consider whether Brown should be judicially estopped from asserting comparative negligence. We affirm.

## FACTS

While looking for his dogs, McFaddin parked his westbound truck on the eastbound shoulder near a curve of a road with the headlights on. According to Brown, as he approached the curve he saw headlights in his lane of travel, so he veered to the right to avoid a head-on collision. Brown struck McFaddin and his truck, resulting in McFaddin's death. Brown failed several field sobriety tests and registered a .17 on a breathalyzer test. He was indicted for felony driving under the influence (DUI) and pled guilty to reckless homicide.

As the personal representative of her husband's estate, McFaddin's wife brought this action asserting wrongful death and survival claims.[1] Brown answered, admitting that his vehicle ran off the paved portion of the highway and struck McFaddin but asserting that comparative negligence applied because McFaddin's actions caused Brown to believe the truck was approaching in his lane. Cothran moved for summary judgment as to liability, asserting there was no genuine issue of material fact regarding Brown's liability.

At the summary judgment hearing, the trial court considered three affidavits: two by Brown and one by Maechearda McCray. In an affidavit prepared at the time of his guilty plea, Brown stated: "There was nothing Mr. McFadden did to cause the accident, and there was nothing he could have done to avoid the accident. The accident was all my fault and was caused by the fact that I had had too much to drink and should have never been driving." Brown gave a second affidavit in connection with the instant civil action which painted a completely different picture of the accident. He there claimed: "The only reason this accident occurred was due to Mr. McFadden parking his vehicle in the position that he did which allowed his headlights to shine down the roadway at such an angle as to make it appear to any motorist traveling towards him that Mr. McFadden's vehicle was in their lane of

---

1. The complaint was amended on April 28, 1998, at which time Cothran was substituted as the personal representative.

travel." The affidavit of McCray, who was with Brown shortly before the collision, related her belief that Brown was not intoxicated when he left her. She also alleged that she returned to the accident scene with Brown and "observed that the lights of the McFadden vehicle appeared to be shining directly down the lane of travel ... making it appear that the McFadden vehicle was traveling towards me in my lane of travel; it is my belief that this is the same view that Alvin Brown would have had as he approached the McFadden vehicle and that this is the reason Mr. Brown swerved to his right and off of the roadway in an effort to avoid a head-on collision."

The trial court granted Cothran partial summary judgment on the issue of liability based on the doctrines of judicial estoppel and collateral estoppel.[2] This appeal followed.

## STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), SCRCP; *see Bessinger v. Bi–Lo, Inc.*, 329 S.C. 617, 619, 496 S.E.2d 33, 34 (Ct.App.1998). In determining whether any triable issues of fact exist, the evidence and all reasonable inferences from it must be viewed in the light most favorable to the party opposing summary judgment. *Summer v. Carpenter*, 328 S.C. 36, 42, 492 S.E.2d 55, 58 (1997).

## DISCUSSION

### I. Judicial Estoppel

Cothran argues that the trial court's order granting summary judgment should be affirmed because Brown is judicially estopped from contesting liability in this action. We agree.

██ The doctrine of judicial estoppel evolved to protect the truth-seeking function of the judicial process by punishing

---

**2.** The trial court later amended its order to include only the doctrine of judicial estoppel as a ground for granting summary judgment.

those who seek to misrepresent facts to gain advantage. *Hayne Fed. Credit Union v. Bailey*, 327 S.C. 242, 251, 489 S.E.2d 472, 477 (1997); *see also John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir.1995) (stating goal of judicial estoppel "is to prevent a party from playing 'fast and loose' with the courts, and to protect the essential integrity of the process."). As explicitly embraced by our supreme court, "[j]udicial estoppel precludes a party from adopting a position in conflict with one earlier taken in the same or related litigation." *Hayne*, 327 S.C. at 251, 489 S.E.2d at 477. "When a party has formally asserted a certain version of the facts in litigation, he cannot later change those facts when the initial version no longer suits him." *Id.* However, the *Hayne* court only adopted the doctrine as it applies to facts, not law.

The application of judicial estoppel "is an equitable concept, depending on the facts and circumstances of each individual case, [and] application of the doctrine is discretionary." *Carrigg v. Cannon*, 347 S.C. 75, 83–84, 552 S.E.2d 767, 772 (Ct.App.2001) (quoting *Hawkins v. Bruno Yacht Sales, Inc.*, 342 S.C. 352, 368, 536 S.E.2d 698, 706 (Ct.App.2000), *cert. granted* Sept. 27, 2001). Generally, for the doctrine to apply, courts look to the following factors:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, ... whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled,...." A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*N.H. v. Me.*, 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (citations omitted); *see Lowery v. Stovall*, 92 F.3d 219 (4th Cir.1996).[3] "Judicial acceptance means only that the

---

**3.** The South Carolina Supreme Court has not adopted a precise test to be used in determining judicial estoppel. This court has previously suggested but never applied the following test:

> (1) two inconsistent positions must be taken by the same party or parties in privity with each other;

first court has adopted the position urged by the party ... as part of a final disposition." *Lowery,* 92 F.3d at 224–25. The above outlined approach emphasizes the potential for harm to the judicial process.

In this case, the same party presented two patently inconsistent sets of facts in two different courts. In the earlier proceeding, Brown and his attorney repeatedly told the court that the accident was entirely Brown's fault because he had been drinking and driving. In addition, Brown's affidavit and Brown's attorney both stated that McFaddin in no way caused the accident. Brown presented one set of facts at his guilty plea proceeding in the interest of receiving a more lenient sentence but now attempts to assert a different set of facts to lessen his civil liability. Based on the facts presented at his guilty plea, Brown was allowed to plead guilty to reckless homicide, an offense carrying a maximum ten year sentence, rather than felony DUI which carries a maximum twenty-five year sentence. *See* S.C.Code Ann. §§ 56–5–2910 & 2945 (Supp.2001) (providing sentences for reckless homicide and felony DUI respectively). In reliance on that set of facts, the plea judge sentenced him to only six years imprisonment. Permitting Brown to assert different facts in this action could result in the appearance that one court or the other was misled. Moreover, allowing Brown to change his story now might result in an unfair advantage to him. It would be unfair

---

(2) the positions must be taken in the same or related proceedings involving the same parties or parties in privity with each other;
(3) the party taking the position must have been successful in maintaining the first position and must have received some benefit;
(4) the inconsistency must be part of an intentional effort to mislead the court; and
(5) the two positions must be totally inconsistent
*Carrigg,* 347 S.C. at 83, 552 S.E.2d at 772 (citing 28 Am.Jur.2d *Estoppel & Waiver* § 74 (2000)). Based on *Hayne,* it does not appear that the second prong of the test articulated above would apply because the parties were not all the same and the proceedings were completely unrelated. In *Hayne,* a father purchased a piece of property but titled it in his son's name. During his divorce, the father denied any legal interest in the property and claimed that it belonged to his son. The son then died, leaving the property to his wife, and the father did not file a claim against the estate. Thereafter, the father filed a claim in a foreclosure action asserting ownership of the property by way of a resulting trust. The court found the father was judicially estopped from claiming ownership of the property.

to allow him to reap the benefit of a lesser sentence by admitting culpability but avoid civil liability by denying it.

We agree with the trial court that Brown was judicially estopped from presenting facts inconsistent with those presented at his guilty plea proceeding, including the McCray affidavit. Those facts are conclusive as to liability. Therefore, there was no issue of material fact remaining on the issue. Accordingly, we affirm the trial court's grant of summary judgment.

## II. Competing Affidavits and Summary Judgment

■ Cothran also argues that the trial court's order should be affirmed on its merits because when the evidence is viewed in the light most favorable to Brown, summary judgment is warranted. We agree.[4]

Brown contends that his conflicting affidavits together with McCray's affidavit, create an issue of fact that should preclude summary judgment. Cothran contends that Brown should not be permitted to create an issue of fact by submitting affidavits that conflict with his sworn statement prepared at the time of his guilty plea.

■ Because our courts have not spoken on this issue, we may seek guidance from federal cases. *See Gardner v. Newsome Chevrolet–Buick, Inc.,* 304 S.C. 328, 330, 404 S.E.2d 200, 201 (1991) ("Since our Rules of Procedure are based on the Federal Rules, where there is no South Carolina law, we look to the construction placed on the Federal Rules of Civil Procedure."). Numerous federal courts have held that a party may not create an issue of fact for purposes of summary judgment by submitting an affidavit to contradict that party's own prior sworn affidavit. *See generally* 11 James W. Moore

---

4. The trial court based its ruling on the ground of judicial estoppel. This court, however, is not limited to that ground in affirming the trial court's order. "The appellate court may review respondent's additional reasons and, if convinced it is proper and fair to do so, rely on them or any other reason appearing in the record to affirm the lower court's judgment." *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000); *see* Rule 220(c), SCACR. However, this court should not base its decision on Rule 220(c) when the reason does not appear in the record or "when the court believes it would be unwise or unjust to do so in a particular case." *Id.*

*Moore's Federal Practice* § 56.14[1][f] (3d ed. 2001) ("[P]arties may not intentionally create a triable issue of fact by submitting conflicting submissions."). Our own Fourth Circuit has held: "A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir.1984).[5] We believe the federal precedent on this issue is sound and persuasive. Brown should not be permitted to create an issue of fact in order to survive summary judgment by submitting an affidavit that directly contradicts his own prior sworn testimony.

 In cases of competing affidavits, we find that the trial court may disregard the later affidavit if it is submitted solely to create a factual issue to avoid summary judgment. *See Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir.1990) (affirming trial court's refusal to consider physician's conclusory affidavit issued in contradiction to his deposition testimony for the purpose of surviving summary judgment); *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)("[C]ourts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue."). In this case, the second affidavit was not based on any facts unknown to Brown when he gave his first affidavit and was given only in the interest of furthering his comparative negligence claim. This situation is distinguishable from

---

5. Other federal circuits have reached the same result. *See Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1008 (9th Cir.1998) (stating that a party cannot create a triable issue of fact and thus escape summary judgment by contradicting his or her own testimony); *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir.1998) ("Alas, not good enough: a party cannot create a triable issue by contradicting his own sworn testimony."); *Hayes v. New York City Dep't of Corrs.*, 84 F.3d 614 (2nd Cir.1996) (holding that a party may not create an issue of fact precluding summary judgment by submitting affidavit that, by omission or addition, contradicts affiant's previous testimony); *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir.1996) (stating a party may not create an issue of fact for purposes of summary judgment by submitting an affidavit contradicting prior testimony); *Rios v. Bigler*, 67 F.3d 1543 (10th Cir.1995) (stating that a party may not create a sham factual issue to survive summary judgment by presenting an affidavit contrary to the affiant's prior testimony, and the subsequent affidavit should be disregarded).

one in which the affiant's statements rely on newly discovered evidence or merely seek to explain earlier testimony. *Franks* at 1237. Accordingly, Brown's second affidavit should not have been considered by the trial court.

 With respect to McCray's affidavit, we initially note that materials used to support or contravene a motion for summary judgment must be admissible at trial. *See Moss v. Porter Bros., Inc.,* 292 S.C. 444, 448, 357 S.E.2d 25, 28 (Ct.App.1987); *Saro Invs. v. Ocean Holiday P'ship,* 314 S.C. 116, 121, 441 S.E.2d 835, 838 (Ct.App.1994). The portion of her affidavit about what other people told her is inadmissible under the hearsay rule. *See* Rule 801, SCRE. Her statement "it is my belief that this is the same view that Alvin Brown would have had . . . and that this is the reason Mr. Brown swerved . . . ." is likewise inadmissible as opinion testimony of the ultimate fact at issue. *See Richmond v. Tecklenberg,* 302 S.C. 331, 334, 396 S.E.2d 111, 113 (Ct.App.1990) ("The general rule is that opinion testimony which is determinative of the ultimate fact in issue should be excluded as an invasion of the province of the factfinder."). The remaining language in her affidavit does not create an issue of material fact.

With the exclusion of Brown's second affidavit and portions of McCray's affidavit, Brown's first affidavit leaves no issue of material fact as to liability. Accordingly, we also affirm the grant of summary judgment on this ground.

**AFFIRMED.**

CURETON, CONNOR, HUFF, JJ., and MANNING, J., concur.

GOOLSBY and STILWELL, JJ., concurring in part.

ANDERSON, J., concurring in result only.

PYLE, J., concurring in part and dissenting in part.

GOOLSBY, J., (concurring):

I concur only in Part II of the majority opinion and would not reach the issue relating to judicial estoppel.

STILWELL, J.:

I join in Judge Goolsby's concurring opinion.

ANDERSON, J., (concurring in result only):

I respectfully concur in result only. I vote to *AFFIRM*.

This factual and legal scenario is imbued with a doleful and melancholic history. I disagree with the reasoning and analysis of the majority. The reliance by the majority on federal case law in analyzing Rule 56(c), SCRCP is unnecessary. The application of the judicial estoppel doctrine is dispositive. The case presents the paradigmatic judicial estoppel imbroglio.

## I. Definition and Purpose of the Judicial Estoppel Doctrine

A court must be able to rely on the statements made by the parties because truth is the bedrock of justice. *See, e.g, Douglas v. Allen,* 43 Misc.2d 35, 249 N.Y.S.2d 973, 977 (N.Y.Sup.Ct.1964) ("[A] false oath smacks at the very foundation of our everyday moral code of human relations and to justice itself for without truth we could have no justice."). Therefore, a litigant cannot "blow both hot and cold." *McDanels v. General Ins. Co. of Am.,* 1 Cal.App.2d 454, 36 P.2d 829, 832 (1934). Under the doctrine of judicial estoppel, a party that has assumed a particular position in a judicial proceeding, via its pleadings, statements, or contentions made under oath, is prohibited from adopting an inconsistent posture in subsequent proceedings. *See* 28 Am.Jur.2d Estoppel and Waiver § 74 (2000) ("The fundamental concept of judicial estoppel is that a party in a judicial proceeding is barred from denying or contradicting sworn statements made therein.") (footnote omitted); *see also City of New York v. Black Garter,* 179 Misc.2d 597, 685 N.Y.S.2d 606, 607–08 (N.Y.Sup.Ct.1999) ("Judicial estoppel, or the doctrine of inconsistent positions, precludes a party who assumed a certain position in a prior legal proceeding ... from assuming a contrary position in another action simply because his or her interests have changed.... The doctrine rests upon the principle that a litigant 'should not be permitted ... to lead a court to find a fact one way and then contend in another judicial proceeding that the same fact should be found otherwise.' ") (citations omitted).

The purpose of judicial estoppel is to prevent the manipulation of the judicial system by the litigants. *Case of Canavan*, 432 Mass. 304, 733 N.E.2d 1042 (2000); *see also* 31 C.J.S. *Estoppel and Waiver* § 139 (1996) ("The ... function of judicial estoppel is to protect the integrity of the judicial process ... rather than to protect litigants from allegedly improper conduct by their adversaries.") (footnotes omitted). A court invokes judicial estoppel to prevent a party from changing its position over the course of judicial proceedings. 31 C.J.S. *Estoppel and Waiver* § 139 (1996). The doctrine estops a party from playing "fast-and-loose" with the courts or to trifle with the proceedings. *Id.* (footnotes omitted).

A quintessential case illustrating the efficacy and application of judicial estoppel is *Allen v. Zurich Insurance Company*, 667 F.2d 1162 (4th Cir.1982). Allen was assisting Zurich's insured, Scruggs, in installing a mobile home when the home—which Scruggs had placed on blocks—shifted, fell, and crushed Allen's hand. Allen sued Scruggs in South Carolina state court on a negligence theory to recover for his injuries "while in the employment of the Defendant, Carl H. Scruggs....." *Id.* at 1163. Zurich defended Scruggs. The jury returned a verdict for Allen of $37,000, which Scruggs did not pay.

Allen then brought suit in federal court against Zurich to collect on Scruggs' automobile liability policy and alleged in the complaint he and Scruggs were joint venturers. Zurich claimed it was not liable because Allen was Scruggs' employee at the time of his injury and the policy expressly excluded coverage for bodily injury to any employee. Allen testified he thought he was Scruggs' employee when the accident occurred, but now characterized their relationship as "working together." *Id.* During cross-examination, Allen admitted he had testified he was Scruggs' employee and was paid a weekly salary at the time of his injury in a South Carolina Industrial Commission hearing, in a deposition, and before the state court. A verdict was returned for Allen. Zurich moved for judgment notwithstanding the verdict on two grounds: (1) Allen's status as an employee of Scruggs was affirmatively adjudicated in state court and Allen was bound by that determination; and (2) the only reasonable inference to be drawn from the evidence presented at trial is that Allen was

Scruggs' employee and acting within the scope of his employment when he was injured. The district court granted the motion on the second ground. *Id.* at 1164.

The Fourth Circuit affirmed the JNOV order on the grounds of judicial estoppel:

> Closely related to collateral estoppel, but dissimilar in critical respects, is another principle that we conclude should preclude Allen on the dispositive issue. In certain circumstances a party may properly be precluded as a matter of law from adopting a legal position in conflict with one earlier taken in the same or related litigation. "Judicial estoppel" is invoked in these circumstances to prevent the party from "playing fast and loose" with the courts, and to protect the essential integrity of the judicial process.

*Id.* at 1166 (citations omitted).

The court was persuaded the doctrine was applicable in Allen's case: "Here is a party who, as the record conclusively shows, has earlier ... asserted a legal position respecting his employment relationship with another that is completely at odds with the position now asserted." *Id.* at 1167 (footnote omitted).

Judicial estoppel's essential function and justification is "to prevent the use of 'intentional self-contradiction ... as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Id.* (citation omitted).

## II. History of the Application of Judicial Estoppel Doctrine by South Carolina State Courts

The South Carolina decision expressly embracing judicial estoppel is *Hayne Federal Credit Union v. Bailey*, 327 S.C. 242, 489 S.E.2d 472 (1997). However, several state court cases tangentially addressed judicial estoppel as a cognizable legal principle in South Carolina many years before the *Hayne* decision.

> The *Hayne* Court explicitly adopted the doctrine, stating:
> In order for the judicial process to function properly, litigants must approach it in a truthful manner. Although parties may vigorously assert their version of the facts, they may not misrepresent those facts in order to gain advantage in the process. The doctrine thus punishes those who take

the truth-seeking function of the system lightly. When a party has formally asserted a certain version of the facts in litigation, he cannot later change those facts when the initial version no longer suits him.

*Id.* at 251–52, 489 S.E.2d at 477.

While it noted some jurisdictions had expanded judicial estoppel to conclusions of law or assertions of legal theories, the *Hayne* Court held the doctrine's application applied only to inconsistent statements of fact. *Id.* at 251, 489 S.E.2d at 477 (citation omitted).

In *Boykin v. Prioleau*, 255 S.C. 437, 179 S.E.2d 599 (1971), the Supreme Court touched on the doctrine as it related to the case: "The defense of judicial estoppel has not been raised, and the facts appearing here would not support it." *Id.* at 441, 179 S.E.2d at 601 (citation omitted).

In *Zimmerman v. Central Union Bank*, 194 S.C. 518, 8 S.E.2d 359 (1940), the dispositive issue was whether the Circuit Court or the state's banking board had jurisdiction over liquidation of the bank. In a prior matter, the receivers had successfully contended the banking board was empowered to govern the liquidation. In subsequent proceedings, the receivers took the opposite tack. The Court forbade the receiver's change in position by reciting a maxim promulgated by the United States Supreme Court in *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895): "[W]here a party assumes a certain position in a legal proceeding ... he may not thereafter, simply because his interests have changed, assume a contrary position." *Id.* at 532, 8 S.E.2d at 365.

This Court has applied judicial estoppel in several cases since the *Hayne* Court expressly adopted the doctrine. *See, e.g., Carrigg v. Cannon*, 347 S.C. 75, 552 S.E.2d 767 (Ct.App. 2001) (per curiam); *Quinn v. Sharon Corporation*, 343 S.C. 411, 540 S.E.2d 474 (Ct.App.2000) (majority and concurring opinions); *Hawkins v. Bruno Yacht Sales*, 342 S.C. 352, 536 S.E.2d 698 (Ct.App.2001), *cert. granted.*

## III. Technical Application of the Judicial Estoppel Doctrine

Judicial estoppel is an equitable concept; therefore, its application is within the discretion of the court. 31 C.J.S.

*Estoppel and Waiver* § 139 (1996). There is no fixed method or formula that courts must follow in the doctrine's application. *Id.; Allen v. Zurich Insurance Company*, 667 F.2d 1162 (4th Cir.1982). Nevertheless, an analytical construct has emerged to guide our courts' utilization of the doctrine.

The court must determine if the factual and procedural circumstances of a case at bar make application of judicial estoppel permissible. Proper application generally requires the satisfaction of the following five criteria:

(1) two inconsistent positions must be taken by the same party or parties in privity with each other;

(2) the two inconsistent positions were both made pursuant to sworn statements;

(3) the positions must be taken in the same or related proceedings involving the same parties in privity with each other;

(4) the inconsistency must be part of an intentional effort to mislead the court; and

(5) the two positions must be totally inconsistent—that is, the truth of one position must necessarily preclude the veracity of the other position.

*Quinn v. The Sharon Corporation*, 343 S.C. 411, 540 S.E.2d 474 (Ct.App.2000) (Anderson, J., concurring), *discussed in* John S. Nichols, *Safeguarding the Truth in Court: The Doctrine of Judicial Estoppel*, 13–FEB S.C. Law. 32 (2002).

These criteria have enjoyed the approbation of our appellate courts, as evinced by their recitation in several opinions following the *Quinn* concurrence. *See, e.g, Carrigg*, 347 S.C. at 83, 552 S.E.2d at 771–72.

The United States Supreme Court has recently addressed the issue of judicial estoppel. In *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), the Court presided over a boundary dispute between the two states. Specifically, New Hampshire contended its boundary with Maine ran along the Maine shore, such that the Piscataqua River and all of Portsmouth Harbor belonged to New Hampshire. The Court dismissed the suit, holding that under the doctrine of judicial estoppel, New Hampshire was equitably precluded from asserting the river's boundary ran along

the Maine shore because the position was in contravention to the stance New Hampshire took in litigation with Maine during the 1970's.

In the 1970's action, New Hampshire and Maine expressly agreed a 1740 decree fixed the boundary in the Piscataqua Harbor area. The states' quarrel was over the location of the "Mouth of Piscataqua River," "Middle of the River," and "Middle of the Harbour" within the contemplation of the decree. The states drafted a settlement in which they agreed the words "Middle of the River" in the 1740 decree referred to the middle of the Piscataqua River's main channel of navigation. The United States Supreme Court accepted the agreement and issued a final decree, which defined "Middle of the River" as "the middle of the main channel of navigation of the Piscataqua River." *Id.* at 747, 121 S.Ct. at 1813 (citation omitted). Because of this previous litigation, New Hampshire was precluded from asserting a different argument concerning the boundary's location in the later action.

In its analysis, the Court articulated three factors it found beneficent when determining whether judicial estoppel should be applied against New Hampshire's claims:

First, a party's later position must be "clearly inconsistent" with its earlier position.

. . . .

Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled[.]" Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," and thus poses little threat to judicial integrity.

. . . .

A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 750, 121 S.Ct. at 1815 (citations omitted).

The *New Hampshire* Court's factor concerning a litigant's prior success in persuading a tribunal to accept the litigant's

earlier position differs from the policy articulated within the *Quinn* concurrence. *Quinn* was influenced in large part upon the rule enunciated within the seminal case involving the judicial estoppel doctrine, *Hamilton v. Zimmerman,* 37 Tenn. (5 Sneed) 39 (Tenn.1857). Under the *Hamilton* rule, anytime a party asserts a position under oath, that party is precluded from repudiating that position in a later proceeding. *Hamilton,* 37 Tenn. (5 Sneed) at 47–48, *analyzed in* Rand G. Boyers, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel,* 80 Nw. U.L.Rev. 1244 (1986).

With the enumeration of the five factors in the *Quinn* concurrence and *Carrigg,* South Carolina clearly did not adopt the *Hamilton* rule in a wholesale manner. Limitations on the application of judicial estoppel do exist. Nevertheless, the *Quinn* concurrence demonstrates there is sanctity in the oath and whether the litigant enjoyed prior success with an earlier averment is immaterial:

> As originally conceived in *Hamilton v. Zimmerman,* the doctrine of judicial estoppel was based solely on the sanctity of the oath. Under this philosophy, the fact a litigant is using the court as a forum for his inconsistent statements injures the judicial system; therefore, such abuse must be avoided under all circumstances. Any perpetuation of untruth or misrepresentation eviscerates public confidence in the integrity of the judicial system. ***Accordingly, whether a party was successful or not in propounding the validity of its initial position is immaterial: the party will be judicially estopped from assuming a different stance, relating to the facts, in subsequent proceedings.***

*Id.* at 422, 540 S.E.2d at 480 (emphasis added) (citations omitted).

In contrariety, the majority of jurisdictions that recognize the doctrine of judicial estoppel follow the "judicial integrity" policy. Boyers, *supra,* at 1252. This policy provides the rationale for the "prior success" condition. *Id.* at 1253. The policy is grounded in the following logic: If there was no previous judicial acceptance of the contrary position, then no risk of inconsistent results exists. If there is no risk of inconsistent results, then the integrity of the judicial process is not threatened. If the integrity of the judicial process is

not threatened, then there is no policy justification warranting application of judicial estoppel. *Id.*

Support for application of the judicial estoppel doctrine without a showing of prior success can be found in *Allen v. Zurich Insurance Company,* 667 F.2d 1162 (4th Cir.1982), a federal appellate court case emanating from South Carolina. In *Allen,* the Fourth Circuit stated application of the judicial estoppel doctrine is "perhaps not necessarily confined to situations where the party asserting the earlier contrary position there prevailed. . . ." *Id.* at 1167.

Additionally, our Supreme Court has arguably indicated prior success is not a criterion with its condition-less pronouncement regarding application of the doctrine in *Hayne Federal Credit Union v. Bailey,* 327 S.C. 242, 489 S.E.2d 472 (1997): "When a party has formally asserted a certain version of the facts in litigation, he cannot later change those facts when the initial version no longer suits him." *Id.* at 252, 489 S.E.2d at 477.

Moreover, the *New Hampshire* Court itself gives tribunals the discretion to examine whatever factors they desire when considering application of judicial estoppel:

> *In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel.* Additional considerations may inform the doctrine's application in specific factual contexts.

*Id.* at 752, 121 S.Ct. at 1815 (emphasis added).

A conclusive determination of the course South Carolina's state courts should follow concerning the prior success element is unnecessary for purposes of adjudicating the instant case. The appellant, Alvin Brown, averred at the guilty plea hearing that he was solely responsible for the accident. This asseveration was clearly a tactic Brown used to obtain a lesser sentence from the plea judge. A defendant's admission of guilt is a proper consideration for a plea judge when considering the defendant's sentence. *See State v. Brouwer,* 346 S.C. 375, 391, 550 S.E.2d 915, 924 (Ct.App.2001) (Anderson, J., dissenting) ("A genuine admission of guilt may properly result in a lighter sentence than would be appropriate for an intransigent and unrepentant malefactor.") (citation omitted).

Brown's admission at the plea hearing was arguably successful, especially in light of the egregiousness of his crime. Instead of receiving the ten-year maximum prescribed by statute, the plea judge sentenced Brown to a six-year term.

## IV. Application of the Judicial Estoppel Doctrine in the Case *Sub Judice*

Respondent Ferrell Cothran, as personal representative of the Estate of Douglas H. McFaddin, contends this Court erred in its initial opinion by concluding Brown has not yet had a full and fair opportunity to dispute whether McFaddin contributed to the accident. To the contrary, the record clearly reveals the relative degree of culpability and Brown's *lata cupla* were at issue and decided at the guilty plea hearing. Brown is bound by the factual admissions and statements he made during those proceedings, which definitively show Brown was completely responsible for causing the accident. Accordingly, I find Brown has had a full and fair opportunity to contest the issue of McFaddin's relative fault.

Indubitably, Brown made the relative fault of the parties an issue in his guilty plea. He did so by specifically representing to the plea judge the accident was a result of his drinking and that no "blame whatsoever should be placed on Mr. McFaddin," who Brown declared did not have "anything to do with the accident." Brown intentionally put this issue before the plea judge with the goal of obtaining a lesser sentence. Brown did obtain a lesser sentence—instead of receiving the ten-year maximum sentence authorized by statute for reckless homicide, he was sentenced to a six-year term of imprisonment.

Considering the fact the relative fault of the parties was at issue during the guilty plea and Brown specifically represented McFaddin was not to blame for the accident whatsoever, and further considering Brown obtained the benefit of a reduced sentence after having accepted responsibility for the accident, I conclude the Circuit Court was correct in holding Brown was judicially estopped from contesting liability in the civil suit. The circuit judge properly granted summary judgment to Cothran on the issue of liability.

PYLE, A.J. (concurring in part and dissenting in part):

I would hold that the trial judge was correct in granting summary judgment against the defendant on the issue of liability but was in error in applying the doctrine of judicial estoppel to the facts of this case.

"Judicial estoppel precludes a party from adopting a position in conflict with one earlier taken in the same or related litigation." *Hayne Federal Credit Union v. Bailey*, 327 S.C. 242, 251, 489 S.E.2d 472, 477 (1997). The trial judge erred in finding Brown's position, that McFaddin contributed to the accident, was inconsistent with his position during his guilty plea and that it was an intentional attempt to mislead the court in order to gain an unfair advantage in the civil proceeding. Brown's attorney, at his plea, conceded Brown's recklessness, asserted that McFaddin's headlights confused Brown. He had experts prepare a video of the scene as it appeared at the time of the accident to demonstrate Brown's confusion. Brown himself asserted he was blinded because McFaddin was parked in a curve facing him and that had he swerved to the left instead of the right he possibly would have hit another motorist head on.

I believe that:

1. McFaddin's negligence, if any, was not an issue that had to be considered by the court in connection with Brown's plea to reckless homicide.

2. Brown's recklessness did not have to be the sole proximate cause for him to be found guilty of reckless homicide so long as it is a proximate cause.

3. In the civil context, any negligence on the part of McFaddin would be used to reduce the amount of Cothran's recovery in direct proportion to the percentage of McFaddin's negligence under the concept of comparative negligence.

4. While Brown is bound by his factual admissions from his guilty plea, the relative degree of culpability was not at issue nor was it decided in the prior proceeding. Because plaintiff's relative fault, if any, was not an issue in his guilty plea, Brown has not yet had a full and fair opportunity to contest it.

5. The grant of summary judgment in Cothran's favor on the basis of judicial estoppel was inappropriate.

I would affirm the granting of partial summary judgment on the issue of Brown's liability, but would reverse the circuit court's application of judicial estoppel to this case.